## STATE, DEPARTMENT OF PUBLIC SAFETY, v. WILFRED OSCAR PRESLER.

246 N. W. 2d 570.

October 8, 1976—No. 45781.

*Warren Spannaus,* Attorney General, and *Thomas K. Overton,* Special Assistant Attorney General, for appellant.

*Robins, Meshbesher, Singer & Spence, Kenneth Meshbesher,* and *John Clifford,* for respondent.

SCOTT, JUSTICE.

This is an appeal by the state from a judgment notwithstanding the verdict in a driver's license revocation proceeding under the implied-consent law. The issues at the jury trial de novo in district court were whether the respondent had refused to submit to the chemical testing and, if so, whether the refusal was reasonable. The jury, by special verdict, found that respondent

had refused a breathalyzer test and a blood test and that the refusal was not based upon reasonable grounds. Upon respondent's motion the district court granted judgment notwithstanding the verdict. The issue on appeal is whether the trial court properly overturned the jury's finding that respondent refused testing. We affirm.

On September 1, 1972, a qualified police officer, based upon reasonable and probable cause to believe that respondent was driving or operating his motor vehicle while under the influence of an alcoholic beverage, lawfully placed him under arrest and transported him to the traffic interview room. Pursuant to the provisions of the implied-consent law, Officer Don Bowles then offered him a blood or a breath test. According to the record, Officer Bowles gathered the usual preliminary details as to identification and then advised respondent of his rights regarding chemical testing. The officer testified that at one point respondent indicated that he wanted to take a blood test, but that thereafter he would not say that he would take a blood test. An implied-consent form was then completed indicating that respondent refused to submit to testing.

The officer determined that a videotape interview was necessary, based upon this equivocation by respondent. The videotape was twice played to the jury during the trial. The following is a complete transcript of that tape:

"Q. This is a videotape film being made.

"A. Okay, good deal. Now I am on camera, right?

"Q. That's right. Have you been advised of your rights, sir? Have you been advised of your rights, sir?

"Will you go down to the other end of the room and stand on the end of the black line, please.

"Sir, just so I am sure you understand your rights, I am going to read them to you again for the third time. That any test, chemical or otherwise, that you take for the purpose of determining whether or not you are under the influence of an alcoholic beverage must be voluntary and with your consent and that the

result of such test or tests may be used for or against you in the event of a trial. That you have the right to have additional tests made by your physician.

"A.   I don't get that.

"Q.   Or registered nurse of your own choosing.

"A.   You should be on TV, really.

"Q.   That you may refuse to take a blood test or breath test to determine the alcoholic content of your blood.

"A.   You will never make it.

"Q.   But that such refusal may result in your right to drive being revoked or denied. Do you consent to take a chemical test? I will let you think for a couple seconds.

"Traffic accident—No, sir, you will have to call 348-3821. I am right in the middle of a test here. I am sorry, I can't talk right now, I am right in the middle of a test. You will have to call 348-3821. (Telephone conversation.)

"Okay, now you have had a minute or so to make up your mind. Do you consent to take a chemical test?

"Wilfred Oscar Presler of 1429 Logan Avenue North, you have the right to remain silent. That anything you say may be used in the court as evidence for or against you. That you are entitled to talk to your lawyer now and have him present now or at any time during questioning.

"A.   Call him.

"Q.   That if you cannot afford a lawyer one will be appointed for you without cost by the courts. Do you understand what I have just read to you? Do you understand what I have just read to you?

"A.   Will you start where I have the right to consult a lawyer.

"Q.   Do you wish to call an attorney at this time? Would you like to call an attorney right now?

"A.   Do I have the right?

"Q.   Yes, sir.

"A.   Okay, I will call.

"Q.   What is your attorney's name?

"A. Meshbesher.

"Q. Which Meshbesher?

"A. Does it make any difference?

"Q. I believe there is two or three of them, do you know which one you want to talk to? You know which Meshbesher you would like to talk to?

"A. Why don't you get on the camera?

"Q. Sir, let me ask you one more time, do you consent to take a chemical test?

"A. I answered that once before.

"Q. Will you take a test with that instrument sitting right next to you there? Will you take a blood test?

"A. Could be.

"Q. I would like a yes or no answer, will you take a blood test?

"A. I am being harassed again by one little fellow back there."

The sole dispute which arises from this testimony is respondent's claim that upon completion of the videotape he told the officers that he would take a blood test. He further testified that the officers said that they did not have time to take him to a hospital and that there were "customers waiting." Thus, he asserts that there was no refusal to submit to chemical testing. At the trial, the officer testified that he was unable to remember respondent asking him for a test after the completion of the videotaping.

In granting the judgment notwithstanding the verdict, the trial court, in a memorandum, stated as follows:

"The burden of proof was on the state to establish that Mr. Presler refused to take the blood test. Officer Bowles testified that Mr. Presler once consented to the blood test and never said that he would not take the test.

"On the video tape presentation when Mr. Presler was asked whether he would take the blood test his response was 'could be.'

"Mr. Presler testified that after the video tape interview he

said he would take the test, and this testimony was uncontradicted because Officer Bowles did not recall the incident and could not testify positively whether or not Mr. Presler had asked to take the test afterwards.

"On the foregoing state of the evidence, I do not believe that the jury properly could find that the state had proven that Mr. Presler refused to take the blood test."

On the record presented, we affirm the trial court's judgment that no reasonable man could find that respondent refused to take a chemical test. Respondent indicated that he was willing to take the blood test at the beginning of the interrogation. While his later statements were somewhat equivocal, this was not sufficient in the confusing circumstances of this case to constitute a refusal. The trial court properly granted the motion for judgment notwithstanding the verdict. Rule 50.02, Rules of Civil Procedure; Filas v. Daher, 300 Minn. 137, 218 N. W. 2d 467 (1974).

Affirmed.