William Frank **PALBICKI**, Appellant,

v.

**COMMISSIONER OF PUBLIC SAFETY**, Respondent.

No. C3–83–1867.

Court of Appeals of Minnesota.

April 24, 1984.

Mark D. Luther, St. Louis Park, for appellant.

Hubert H. Humphrey, III, Atty. Gen., Linda F. Close, Joel A. Watne, Asst. Atty. Gen., St. Paul, for respondent.

Considered and decided by POPOVICH, C.J., PARKER and LANSING, JJ., with oral argument waived.

## OPINION

LANSING, Judge.

This is an appeal from an order of the Hennepin County Municipal Court sustaining the revocation of the driving privileges of William Palbicki pursuant to Minn.Stat. § 169.123 (1982), the implied consent statute. On appeal, Palbicki contends that he had reasonable grounds to refuse a blood test, that a breath test should have been offered again when he refused to take the blood test, and that the State failed to show that the nurse was qualified to withdraw blood. We affirm.

## ISSUES

1. Was appellant's refusal to submit to a blood test because the nurse did not provide medical identification and was not dressed in a nurse's uniform based on reasonable grounds?

2. Was the peace officer required to offer a breath test again when appellant refused to allow the nurse to withdraw blood?

## FACTS

Shortly before 1:00 a.m. on September 9, 1983, Richfield police officer Maurice Merabella arrested appellant William Palbicki for driving while under the influence of alcohol. Merabella transported Palbicki to the Richfield Police Station, read Palbicki the implied consent advisory form and requested that he submit to a breath test.

Palbicki indicated that he wanted to consult an attorney.

Palbicki talked with an attorney for about 18 minutes by telephone. A few minutes later the attorney called back, informed Merabella that he had advised Palbicki not to submit to any test, and asked to speak again with Palbicki. He was allowed to do so.

After the second consultation, Merabella offered Palbicki the breath test. He refused to submit to the breath test, but said he would take a blood test. Merabella explained that he was no longer obligated to offer a blood test, but that he could telephone a nurse who was "on call" with the Richfield Police Department to come to the station and administer the blood test. Palbicki stated that he wanted to take a blood test and the nurse was called.

About one hour later, Marsha Hudson, who is a nurse, arrived at the police station. She was wearing regular clothing rather than a nurse's uniform. Palbicki described her apparel as a loose top and blue jeans.

Upon her arrival, Hudson got out the blood kit, prepared to administer the test, and asked Palbicki to roll up his sleeve. At that point, Palbicki asked to see her credentials to make sure she was a nurse. She stated that she did not have identification with her. Merabella vouched to Palbicki that Hudson was a nurse and advised Palbicki that he would have to take their word for it and submit to the blood test or it would be considered a refusal.

Palbicki refused to allow the nurse to administer the blood test and requested that he be taken to Fairview Southdale Hospital. Merabella denied this request. Merabella did not reread the implied consent advisory form, and he did not offer the breath test again. Palbicki did not request a breath test.

At trial Palbicki testified that his wife was a nurse. He stated that his refusal was based on concern for his health because he had heard of incidents where needles had broken off while in the arm allowing air to enter the vein.

## ANALYSIS

### I

The Commissioner of Public Safety may not revoke the driver's license of a person who refuses a chemical test if the person has reasonable grounds for the refusal. The implied consent statute provides that "[i]t shall be an affirmative defense for the petitioner to prove that, at the time of the refusal, his refusal to permit the test was based upon reasonable grounds." Minn. Stat. § 169.123, subd. 6 (1982). Palbicki contends that he had a reasonable concern about Hudson's qualifications. He argues that her clothing, together with her failure to present medical identification, provided a reasonable basis for him to refuse the blood test.

The procedures for chemical testing are set forth in the Implied Consent Statute:

Only a physician, medical technician, physician's trained mobile intensive care paramedic, registered nurse, medical technologist or laboratory assistant *acting at the request of a peace officer* may withdraw blood for the purpose of determining the presence of alcohol or controlled substance. This limitation does not apply to the taking of a breath or urine specimen. The person tested has the right to have a person of his own choosing administer a chemical test or tests in addition to any administered at the direction of a peace officer; provided, that the additional test specimen on behalf of the person is obtained at the place where the person is in custody, after the test administered at the direction of a peace officer, and at no expense to the state. * * * *The person administering a test at the request and direction of a peace officer* shall be fully trained in the administration of the tests pursuant to standards promulgated by rule by the commissioner of public safety.

Minn.Stat. § 169.123, subd. 3 (1982) (emphasis supplied). The statute places the responsibility for requesting and directing the test on the peace officer. Officer Merabella's qualifications as a certified peace officer are not in question. There is also no dispute that Marsha Hudson was acting at the request of Officer Merabella.

Palbicki maintains that unless *he* was satisfied that Marsha Hudson was a qualified nurse, he was entitled to refuse the blood test. There is no statutory requirement that the person withdrawing the blood at the officer's direction must prove to the driver that he or she is qualified before being allowed to take the sample. The statute permits a driver to have *additional* tests administered by anyone the driver chooses. However, the driver cannot direct where, when or by whom the initial test requested by the officer will be administered. To require proof of medical identification and qualifications prior to submitting to a test is to impose a statutory requirement that is not there.

The inquiry into whether the refusal was reasonable does not end here. The Supreme Court has found a refusal to be reasonable even when a statute was not violated. *State, Dept. of Highways v. Beckey,* 291 Minn. 483, 192 N.W.2d 441 (1971) (officer's request was confusing and misleading). Whether a driver has reasonable grounds to refuse to be tested is a question of fact for the trial court. The trial judge determined that Palbicki did not have reasonable grounds for refusing to submit to a blood test. In reviewing the record it is clear that Officer Merabella vouched for the nurse's qualifications. Furthermore, the behavior of Hudson, combined with the circumstances under which Palbicki encountered her, gave reasonable inferences of her qualifications to administer the test. Palbicki contends that Hudson was not dressed in clothing that would identify her as a nurse. However, it is unreasonable to expect an "on call" nurse to arrive at a police station at 2:00 a.m. dressed in a nurse's uniform. It is far more likely at that hour that a nurse would be wearing the casual clothes that Palbicki described. Palbicki's contention that the failure to provide medical identification made his refusal reasonable is no more persuasive. Although it might have been helpful, there is no requirement that a

nurse must carry or provide identification. For these reasons, we hold that the trial court did not err in determining that Palbicki did not have a reasonable ground for refusing the blood test.

## II

■ Palbicki also contends that the arresting officer should have offered him another opportunity to consent to a breath test after he refused to take the blood test. Palbicki cites *State, Dept. of Highways v. Lauseng*, 289 Minn. 344, 183 N.W.2d 926 (1971), as authority for his position that the breath test should have been offered again. *Lauseng* involved a defendant who, despite a good faith effort, was physically unable to produce a urine sample for the urine test he had consented to take. This case is inapplicable because there was no question of Palbicki's ability to provide a blood sample.

Nothing in the statute or the cases cited by Palbicki suggests that an officer has a duty to renew an offer of testing after it has been refused. Palbicki was properly advised of his rights and offered a breath test. He voluntarily chose a blood test and gave no indication of a change in his refusal to submit to a breath test.

## III

■ Finally, Palbicki contends that the State failed to show that Marsha Hudson was qualified to draw blood. This issue was not raised in Palbicki's petition for judicial review and was not specifically contested during the implied consent hearing. The trial court made a finding that Hudson was a nurse and this finding has support in the record. Officer Merabella testified that Hudson was the "on call" nurse and that he assured Palbicki that she had the required credentials. At the hearing Palbicki offered no evidence to rebut the officer's testimony that Hudson was in fact a nurse as required by statute. Accordingly, we hold that the trial court did not err in finding that Marsha Hudson was a nurse.

■ We call attention to the requirement in Minn.Stat. § 169.123, subd. 5c (1982), that the petition *"shall* state *with specificity* the grounds upon which the petitioner seeks rescission of the order of revocation or denial."* (Emphasis supplied). The obvious purpose of this language is to alert both the Commissioner and the trial court about what matters are truly at issue so that witnesses are not unnecessarily produced to prove up potential elements not at issue, and the court is not required to listen to evidence on undisputed issues. In this case the petition does not include the grounds that are argued on appeal, specifically that the refusal was reasonable and that the person who was directed to draw the blood was not qualified. It should be noted that the failure to state the grounds upon which the petitioner seeks rescission will, upon proper motion, result in the preclusion of issues at hearing and the limitation of judicial review.

## DECISION

An arresting officer should not be required to engage in unreasonable negotiations with a driver. The appellant in this case had ample opportunity to comply with the testing requirements and refused. The trial court's order sustaining the revocation of Palbicki's driver's license is affirmed.

Affirmed.