Robert Allen SIGFRINIUS, Respondent,

v.

COMMISSIONER OF PUBLIC SAFETY, Appellant.

No. CX–85–1224.

Court of Appeals of Minnesota.

Dec. 17, 1985.

Gerald C. Magee, Minneapolis, for respondent.

Hubert H. Humphrey, III, Atty. Gen., Jeffrey S. Bilcik, Sp. Asst. Atty. Gen., St. Paul, for appellant.

Heard, considered and decided by PARKER, P.J., and FORSBERG and NIERENGARTEN, JJ.

## OPINION

PARKER, Judge.

Respondent was arrested for driving while under the influence of alcohol, and the arresting officer determined that his actions amounted to a refusal to take the breath test. Respondent's driver's license was revoked, and he brought a petition for judicial review. The trial court rescinded the revocation, and the Commissioner of Public Safety appeals. We reverse.

## FACTS

Officer Brian Johnson arrested respondent Robert Sigfrinius at approximately 12:45 a.m. on December 12, 1984. He read respondent the implied consent advisory and offered him the choice of taking a breath, blood or urine test. Respondent agreed to take a breath test. The officer testified at the hearing that prior to giving a breath test, an officer must observe the driver for 15 minutes to ensure that the driver does not have anything in his mouth prior to taking the test.

While the officer and respondent were in the squad car, the officer asked respondent if he had something in his mouth. Respondent replied that he did, and he was told to spit it out. Respondent, who had two Certs

breath mints in his mouth, removed only one and left the other one in his mouth.

Officer Johnson testified that he explained to respondent that if he smoked or put anything in his mouth, it would be counted as a refusal. Respondent testified that he was merely told that he was not to have anything to eat, drink or smoke and that he was not to have anything in his mouth. After respondent and Johnson arrived at the sheriff's office and as the breath test was about to be administered, Johnson noticed that respondent again had a Certs in his mouth. Johnson concluded that because respondent had been told a number of times to refrain from putting anything in his mouth, his actions amounted to a refusal. The officer did not then request either a blood or urine test, nor did he indicate that he would wait another period of time and again ask respondent to take a breath test.

The trial court found that respondent was advised five to six times to remove a Certs breath mint from his mouth, on the way to the sheriff's station and in the garage of the sheriff's station. The trial court further found that respondent's actions were calculated to avoid any "suspension" of his license, but held that the officer should have attempted one more time to allow respondent to take the test. It also determined that there must be a "clear-cut, unequivocal refusal" and that in this case there was enough doubt that confusion existed in respondent's mind so that his actions did not amount to a categorical refusal to take the test. The trial court rescinded the revocation of respondent's driving privileges, and the Commissioner brought this appeal.

## ISSUE

Did the trial court err as a matter of law in concluding that respondent did not refuse testing?

## DISCUSSION

The Commissioner argues that the trial court erred as a matter of law in conclud-

ing that respondent did not refuse to take the breath test. Upon review the trial court's conclusions of law are not binding on an appellate court. *A.J. Chromy Construction Co. v. Commercial Mechanical Services*, 260 N.W.2d 579, 582 (Minn.1977).

Under the implied consent law, drivers consent to a chemical test of their blood. Minn.Stat. § 169.123, subd. 2(a) (1984). If the driver refuses the test, none shall be given. Minn.Stat. § 169.123, subd. 4. However, the refusal subjects the driver to revocation of the driver's license by the Commissioner of Public Safety for one year. *Id.*

■ Refusal has not been generally defined in case law or in statute. *Rude v. Commissioner of Public Safety*, 347 N.W.2d 77, 80 (Minn.Ct.App.1984). It is not, however, limited to a verbal response. For example, this court found that a trial court did not clearly err when it found that a driver who blew around, rather than into, an intoxilyzer and failed to provide an adequate breath sample "refused" the test. *Connolly v. Commissioner of Public Safety*, 373 N.W.2d 352, 354 (Minn.Ct.App. 1985). The statute specifically provides that failure to provide two separate, adequate breath samples in the proper sequence constitutes a refusal. Minn.Stat. § 169.123, subd. 2b(c). When drivers had a right to counsel prior to making a decision as to whether to take a test, an unreasonable delay in making that decision constituted a refusal. Minn.Stat. § 169.123, subd. 2(b)(3) (1982), repealed in relevant part at 1984 Minn.Laws ch. 622, § 10; *Prideaux v. State, Department of Public Safety*, 310 Minn. 405, 247 N.W.2d 385 (1976).

■ The trial court specifically found that respondent's actions were calculated to avoid any "suspension" of his license. This finding is tantamount to a finding that respondent attempted to frustrate administration of the test. A driver has a duty to comply reasonably with the administration of a test, and failure to do so constitutes a refusal. In this case the respondent's actions, which the trial court found were spe-

cifically calculated to avoid suspension of his driver's license, amounted to a refusal.

Respondent refers the court to a Minnesota case which he argues is controlling, where the supreme court addressed the issue of whether a driver who consented to take a breath test, but then equivocated, refused under the statute. *State, Department of Public Safety v. Presler*, 310 Minn. 442, 246 N.W.2d 570 (1976). The supreme court upheld the trial court's judgment that:

> [w]hile his later statements were somewhat equivocal, this was not sufficient in the confusing circumstances of this case to constitute a refusal.

*Id.* at 446, 246 N.W.2d at 572. Respondent attempts to equate *Presler* with the facts here. In *Presler* the supreme court affirmed the trial court's determination that no reasonable person could find that respondent refused the test. Here the trial court found that respondent intended to avoid suspension, which, as discussed above, constitutes refusal.

The trial court here found that there was enough doubt that confusion existed in respondent's mind so that his actions were not a "categorical" refusal to take the test. Respondent contends that, as in *Presler*, the confusing circumstances in this case do not constitute a refusal. We must, therefore, examine whether the trial court properly determined that confusion in respondent's mind was sufficient to avoid a finding of refusal.

■ There is and can be no claim by respondent that he was confused by the standard advisory which was given to him; the only advisory required is that set out in the statute, and that is the advisory which was given him. Minn.Stat. § 169.123, subd. 2(b); *State v. Gross*, 335 N.W.2d 509, 510 (Minn.1983); *Holtz v. Commissioner of Public Safety*, 340 N.W.2d 363, 365 (Minn. Ct.App.1983). The advisory, in addition to the information required by statute, also provided:

If the test is unreasonably delayed or if you refuse to make a decision, you will be considered to have refused the test.

The driver was clearly informed as to the relevant law, and the officer had no obligation to explain further. Any confusion which respondent may have experienced was purely subjective, over which the officer had no control and which has no effect on respondent's refusal.

█ Confusion as to the law may in some circumstances render a driver's refusal to take the test reasonable. *State, Department of Public Safety v. Held,* 311 Minn. 74, 75, 246 N.W.2d 863, 864 (1976). However, respondent does not contend here that his confusion made a refusal reasonable; he contends there was no refusal.

Respondent argues that the case is wholly devoid of proof that he was told having Certs in his mouth would affect the result of the test. Consequently, there was no volitional failure on his part to do what was necessary so that the test could be performed. The trial court, however, found that respondent's actions were calculated to avoid suspension of his license.

█ The trial court indicated that the officer was required to make one more attempt at the test. However, an officer has no duty to renew an offer of testing after it has been refused. *Palbicki v. Commissioner of Public Safety,* 347 N.W.2d 512, 515 (Minn.Ct.App.1984).

We agree with the trial court that respondent's actions constituted an attempt to frustrate the administration of the test. We hold that such an attempt constitutes a refusal. Furthermore, there is no evidence to support the trial court's finding that respondent was confused.

### DECISION

The trial court, which determined that respondent's actions were calculated to do exactly what he accomplished, avoid "suspension" of his license, erred as a matter of law in finding that respondent's "confusion" precluded his actions from being considered a refusal. The Commissioner of Public Safety's revocation of respondent's driver's license is reinstated.

Reversed.