Lamont Francis BERENDES,
petitioner, Respondent,

v.

**COMMISSIONER OF PUBLIC SAFETY, Appellant.**

No. C5-85-1437.

Court of Appeals of Minnesota.

March 4, 1986.

Edward W. Simonet, III, Stillwater, for respondent.

Hubert H. Humphrey, III, Atty. Gen., Beverly Conerton, Sp. Asst. Atty. Gen., St. Paul, for appellant.

Heard, considered, and decided by POPO-VICH, C.J., and WOZNIAK and SEDG-WICK, JJ.

## OPINION

WOZNIAK, Judge.

Respondent Lamont Berendes' driver's license was revoked by the Commissioner of Public Safety pursuant to the implied consent law. He petitioned for judicial review, and the trial court rescinded the revocation because it found that the Commissioner failed to establish a sufficient chain of custody for the blood sample. The Commissioner of Public Safety appeals. Respondent did not file a brief and we proceed pursuant to Rule 142.03, Minnesota Rules of Civil Appellate Procedure. We reverse.

## FACTS

On April 6, 1985, Officer Richard Stanek arrested respondent Lamont Berendes for driving while intoxicated. After being read the implied consent advisory, he agreed to submit to a blood test. The blood test indicated a blood alcohol concentration of .11 and the Commissioner revoked respondent's driver's license pursuant to the implied consent law. Respondent petitioned for judicial review.

At the hearing, respondent asserted that the only two issues were probable cause and the accuracy and reliability of the blood test. The only issue on appeal concerns the blood test.

The Commissioner presented testimony and exhibits on the taking and analysis of the blood sample. Officer Stanek testified that he asked Officer James Neuenfeldt to administer the blood sample. Neuenfeldt, a licensed paramedic and police officer, obtained a blood sample kit supplied by the Minnesota Bureau of Criminal Apprehension from a desk at the Cottage Grove Police Department. He checked to ensure that everything was there, that the needle was sterile, and that there was a non-alcohol preparation. Stanek indicated on the implied consent advisory form that the BCA kit number used for the blood sample was B140050.

Neuenfeldt took the blood sample, sealed it, and initialed it in the spot provided for "Blood Collector's Initials." He identified

the tube and his initials at the hearing. Officer Stanek also had his handwriting on the tube, which he identified at the hearing as well. A pink identification card, which came with the BCA blood kit, had Stanek's handwriting on it and Neuenfeldt's signature, indicating that Neuenfeldt took the sample.

Neuenfeldt then placed the tube, the needle and the swab back into the styrofoam container. He sealed the container and initialed the seals. He identified the container and his initials at the hearing. Officer Stanek was present when the styrofoam container was sealed, and he also initialed the seals. Neuenfeldt then placed the styrofoam container holding the sample and other items into the cardboard container for the kit, sealed it, and initialed it in the spot provided for "Blood Collector's Initials." Stanek also put his handwriting on the outer container. Neuenfeldt then gave the kit to Stanek. Stanek put the kit into the sealed evidence locker at the Cottage Grove Police Department. He locked the locker and then dropped the key into a locked box, following the usual procedure in his office for handling blood samples.

Stanek also testified as to the procedures for transporting the kit to the BCA laboratory, although he had no further involvement with the kit after he dropped the key to the evidence locker into the locked box. He testified that the following work day the blood sample is removed from the locked evidence locker by a community service officer or a regular police officer. The kit is either transported to a post office box in the city and deposited in the mail, or it is taken physically by an officer or a community service officer to the BCA laboratory in St. Paul.

Debra Springer is a crime laboratory analyst with the BCA and is employed primarily to test blood and urine samples for alcohol content. She received the blood kit containing the sample of respondent's blood through the mail on April 9, 1985. The outer cardboard mailing container was sealed on both ends; her initials and any corresponding number on the seals were on the box. She broke the seal on one end. She testified that the styrofoam container was also marked with the date and her initials, indicating that the kit was sealed on all four sides. The kit was in normal, intact condition when she received it.

When she opened the styrofoam container, the pink identification card was inside. She testified that she knows it was because her initials and date are on the top right-hand corner, and the corresponding number is marked on the bottom of the card, indicating that it was contained within the styrofoam box. The sample vial was contained within the styrofoam box and was marked with the date she received it, April 9, 1985, her initials, and the number B140050 on the seal, which is also on the sample.

Springer performed two analyses on the sample, one on April 9, 1985, and one on April 11, 1985. She reported a blood alcohol concentration of .11.

The respondent objected to the admission of the Commissioner's blood sample exhibits on foundation grounds because there was no testimony as to what happened to the sample between April 6 and April 9. He contends that the sample could have been tampered with and that there was an incomplete chain of custody. The Commissioner objected to respondent raising the chain of custody issue because the respondent had not specifically raised the issue in his petition for judicial review. The trial court sustained the objection, refusing to allow admission of the blood kit evidence. The trial court did, however, admit the certificate of analysis indicating that the result of the test was .11. The court also found that there was an accurate test of .11.

The court initially sustained the Commissioner's revocation, but then issued an amended order rescinding revocation, concluding that the Commissioner failed to introduce sufficient foundation to establish a proper chain of custody and that he accordingly failed to introduce a test which accurately and reliably indicated a blood alcohol concentration of .10 or more. The

Commissioner appeals from the trial court's order.

## ISSUES

1. Did the trial court err in concluding that the Commissioner failed to introduce sufficient foundation evidence to establish a proper chain of custody?

2. Did the trial court properly decide the chain of custody issue where the petition for judicial review did not state the issue with specificity?

## ANALYSIS

1. Respondent objected to the admission of the blood kit evidence, contending that because there was no evidence as to who transported the blood sample from the locked evidence locker to the BCA laboratory, the chain of custody was not complete. He argued that there was no testimony which would preclude the possibility that there had been tampering with the blood sample. The trial court sustained his objection.

■ This case is very similar to *Schram v. Commissioner of Public Safety*, 359 N.W.2d 632 (Minn.Ct.App.1984), where respondent claimed that the chain of custody was flawed because it was not clear how a blood sample got from the police department to the BCA. The only distinguishing factor is that in *Schram*, an inventory receipt indicated that a Captain Lange had transported the blood sample from the police department to the BCA. The trial court there did not admit the inventory receipt based on lack of foundation because Lange did not testify, and it rescinded the revocation of respondent's driver's license. This court noted in *Schram* that no rigid formula for establishing foundation is necessary to admit a particular item of evidence. *Id.* at 634. All possibility of tampering need not be eliminated:

In the absence of any indication of substitution, alteration, or other form of tampering, reasonable probative measures are sufficient.

*State v. Hager*, 325 N.W.2d 43, 44 (Minn. 1982), quoting M. Graham, *Evidence and Trial Advocacy Workshop: Relevance and Exclusion of Relevant Evidence—Real Evidence*, 18 Crim.L.Bull. 241, 243–46, 247 (1982) (footnotes and citations omitted).

In this case, while there was no evidence as to who transported the sample, the sample had numerous seals and containers at the time Stanek put it in the evidence locker, all of which were intact at the time the criminal laboratory analyst received the sample by mail. No evidence of any tampering was noted.

■ The admissibility of a piece of evidence which is challenged under the chain of custody rule is generally left to the sound discretion of the trial judge. *Hager*, 325 N.W.2d at 44. However, as in *Schram*, the Commissioner here established with reasonable probability that no tampering occurred. The trial court erred when it found that an insufficient foundation was laid. *See Schram*, 359 N.W.2d at 634.

■ 2. The appellant also challenges the trial court's authority to decide the chain of custody issue. Under Minn.Stat. § 169.123, subd. 5c (1984), a petition for judicial review must state with specificity the grounds upon which the driver seeks rescission of the order of revocation. The purpose of this requirement is to alert the Commissioner and the trial court as to matters truly at issue. *Palbicki v. Commissioner of Public Safety*, 347 N.W.2d 512, 515 (Minn.Ct.App.1984).

■ The petition for judicial review by respondent here indicated in relevant part that he sought judicial review of the issue:

That any test taken did not accurately and reliably indicate a blood alcohol content at or in excess of 0.10.

The above does not raise with specificity the issue of chain of custody. *See Schram*, 359 N.W.2d at 634. Consequently, the trial court improperly rescinded the revocation on grounds not alleged with specificity in respondent's petition for judicial review.

## DECISION

The trial court erred when it did not allow the blood test kit into evidence where the Commissioner showed with reasonable probability that no tampering occurred. The trial court also erred when it considered the chain of custody issue which was not raised with specificity in the petition for judicial review. Because the blood test result of .11 was received into evidence, the trial court's rescission of the revocation of respondent's driver's license is reversed.

Reversed.