James Rodney FISHER,
petitioner, Appellant,

v.

COMMISSIONER OF PUBLIC
SAFETY, Respondent.

No. C4–86–547.

Court of Appeals of Minnesota.

July 15, 1986.

She did not get blood, so she pulled it back a little and tried pushing it again. She still did not obtain any blood, so she pulled it out. She took the tourniquet off, gave Fisher a cotton ball, and told him to hold his arm up. She then reached for his other arm and said she would have to try the other arm, but he said she had one chance. Sunderland testified that the syringe was in working order, and if there are no problems, the process of taking a blood sample can take four to five seconds. She has in the past attempted to draw a sample and been unable to do so on the first attempt. The investigating trooper testified Fisher said he had had it when Sunderland attempted to take a blood sample from the other arm. The trooper observed that Fisher's arm was bleeding a minute amount, and that it swelled up from the blood.

Sunderland estimated that the needle was in Fisher's arm 15 to 30 seconds and the trooper estimated a maximum of 15 seconds.

The trooper explained to Fisher that they did not obtain an adequate sample, and reread the implied consent advisory, asking specifically for a urine test. Fisher refused. The trooper explained the consequences of refusing a test, and Fisher said he would see the trooper in court with his attorney.

It was stipulated that there was an accident with property damage and personal injury, there was probable cause to believe Fisher had been driving while under the influence, and the officer had met the statutory pre-conditions for requesting a test pursuant to the implied consent law.

James A. Beuning, Beuning Law Office, Mahnomen, for petitioner, appellant.

Hubert H. Humphrey, III, Atty. Gen., Joel A. Watne, Spec. Asst. Atty. Gen., St. Paul, for respondent.

Considered and decided by CRIPPEN, P.J., and LESLIE, and NIERENGARTEN, JJ., with oral argument waived.

NIERENGARTEN, Judge.

Appellant James Fisher's driving privileges were revoked for refusing testing under the implied consent law. He petitioned for judicial review and, after a hearing, the trial court sustained the revocation. He appeals from the trial court's order. We affirm.

## FACTS

Following an accident in which he was driving, James Rodney Fisher was transported to Clearwater County Hospital where he agreed to take a blood test.

Clarice Sunderland, a registered nurse for 29 years, trained and experienced in taking blood samples, put the syringe into Fisher's arm and pushed the plunger in.

## ISSUE

Did the trial court err when it determined appellant refused testing by not allowing the nurse to attempt to obtain a blood sample a second time?

## ANALYSIS

The implied consent law requires a driver to submit to testing when the statutory

requirements are met. Minn.Stat. § 169.-123, subd. 2(a) (Supp.1985). The driver may refuse testing, but then must suffer the consequence of having his or her license revoked for one year. Minn. Stat. § 169.123, subd. 4 (1984); *Nyflot v. Commissioner of Public Safety*, 369 N.W.2d 512, 517 (Minn.1985), *appeal dismissed*, — U.S. —, 106 S.Ct. 586, 88 L.Ed.2d 567 (1985). At an implied consent hearing, the issue of whether a refusal occurred may be raised. Minn.Stat. § 169.123, subd. 6(3)(a).

The issue here is whether Fisher refused testing, where the nurse was unable to obtain a blood sample from him on her first attempt and he declined to allow her to try the other arm. "A driver has a duty to comply reasonably with the administration of a test, and failure to do so constitutes a refusal." *Sigfrinius v. Commissioner of Public Safety*, 378 N.W.2d 124, 126 (Minn. Ct.App.1985). In *Sigfrinius*, a driver's actions which were specifically calculated to avoid the suspension of his license amounted to a refusal. *Id.* at 127.

■ The trial court stated in a memorandum attached to its order sustaining the revocation:

The Court realizes that an argument can be raised as to where the line should be drawn. Should the State be allowed two attempts, four attempts, or even six attempts? The only answer the Court can give is that the line is not drawn here. It seems reasonable to this Court that the State could request the Petitioner offer his other arm for a second attempt.

We agree. The request was reasonable and Fisher's rejection is a refusal supporting revocation.

■ Fisher argues that the taking of the sample was under the control of the state and the person taking the sample, and that he did not resist or control the insertion of the needle or make it impossible for the sample to be obtained. However, physical resistance to insertion is not required to constitute refusal. It was sufficient here that Fisher orally refused the second attempt to draw blood.

Fisher also argues that he did give one test, and that is all he is required to give under the statute. The statute provides only that a test may be required. Minn. Stat. § 169.123, subd. 2(a). The statute does not limit the test to one attempt to collect a specimen from only one arm.

■ Fisher also contends that Minn.Stat. § 169.123, subd. 3 should apply so that when the subject submits to the test but the Commissioner is unable to complete the test, the evidence of the test should not be admitted. We do not find that section applicable here.

■ Finally, Fisher argues that his refusal was reasonable. Minn.Stat. § 169.-123, subd. 6; *Exsted v. Commissioner of Public Safety*, 375 N.W.2d 594, 596 (Minn. Ct.App.1985). This issue was not raised below, and it cannot be raised for the first time on appeal. *Connolly v. Commissioner of Public Safety*, 373 N.W.2d 352, 354 (Minn.Ct.App.1985).

## DECISION

The trial court did not err when it determined that appellant refused testing.

Affirmed.