Anthony Sebastian **EKONG,**
**Petitioner, Respondent,**

v.

**COMMISSIONER OF PUBLIC SAFETY, Appellant.**

**No. C3–92–1889.**

Court of Appeals of Minnesota.

April 6, 1993.

Michael E. Sullivan, Minneapolis, for respondent.

Hubert H. Humphrey III, Atty. Gen., Joel A. Watne, Special Asst. Atty. Gen., St. Paul, for appellant.

Considered and decided by RANDALL, P.J., and HUSPENI and FOLEY *, JJ.

## OPINION

HUSPENI, Judge.

Respondent's driver's license was revoked by the Commissioner of Public Safety for refusing an alcohol concentration test to determine the presence of alcohol. Upon respondent's petition for judicial review, the trial court determined that when respondent took an alcohol concentration test at a detoxification center, he cured his initial refusal. The trial court rescinded the license revocation, and the Commissioner appeals. We reverse.

## FACTS

University of Minnesota police officer Steven Gjerde was on duty at approximately 12:30 a.m., May 3, 1992, when he observed respondent Anthony Sebastian Ekong making a left turn against a red light. Officer Gjerde stopped respondent's vehicle and observed indicia of intoxication. Respondent refused a preliminary breath test. The officer concluded that respondent was driving while under the influence of alcohol and transported him to the police station. Officer Gjerde read respondent the implied consent advisory and requested that re-

* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

spondent submit to a breath test. Respondent refused to submit to the test.

Officer Gjerde noted on the implied consent advisory form that respondent refused the test at 1:15 a.m. Respondent was then taken to the Hennepin County Detoxification Center. Minneapolis Police Sergeant Earl Stroshane was working a part-time job as a security officer at the detoxification center when respondent arrived. Stroshane testified that, in his opinion, respondent was not under the influence of alcohol. He told respondent that he should have taken the breath test if, in fact, he was not under the influence of alcohol.

John Stenehjem, a health care assistant at the detoxification center, told respondent that he may have lost his license, but told respondent that to prove he was not legally intoxicated he should take a test available at the detoxification center. Respondent decided to submit to a test, and the result showed an alcohol concentration of .01. This test was administered at 2:30 a.m.

Stenehjem testified at the hearing that the test he administered to respondent was "a portable breath test that gives a digital readout" as opposed to a "pass-fail" readout. The trial court rescinded respondent's license revocation, finding that respondent submitted to a valid test at the detoxification center.

## ISSUES

1. Did respondent's petition for judicial review state the facts and underline each claim as required by Minn.Stat. § 169.123, subd. 5c (1990)?

2. Did respondent comply with the implied consent law by submitting to testing at the Hennepin County Detoxification Center after a previous refusal?

## ANALYSIS

### *Standard of Review*

Findings of fact cannot be reversed unless the trial court is clearly erroneous. *Citizens State Bank of Hayfield v. Leth,* 450 N.W.2d 923, 925 (Minn.App.1990). Conclusions of law may be overturned on a showing that the trial court has erroneous-

ly construed and applied the law to the facts of the case. *See Berge v. Commissioner of Pub. Safety,* 374 N.W.2d 730, 732 (Minn.1985). Because all of the relevant facts are undisputed, whether the trial court erred in rescinding the revocation is a question of law. *See Meyers v. Commissioner of Pub. Safety,* 379 N.W.2d 219, 220–21 (Minn.App.1985).

■ 1. Under Minn.Stat. § 169.123, subd. 5c (1990), a petition for judicial review must state with specificity the grounds upon which the driver seeks rescission of the order of revocation. *See Berendes v. Commissioner of Pub. Safety,* 382 N.W.2d 888, 891 (Minn.App.1986).

> [F]ailure to state the grounds upon which the petitioner seeks rescission will, upon proper motion, result in the preclusion of issues at the hearing and the limitation of judicial review.

*Palbicki v. Commissioner of Pub. Safety,* 347 N.W.2d 512, 515 (Minn.App.1984).

Appellant argues that at the hearing respondent conceded he had refused testing and argued only that the police had no basis for requesting a test in the first place. Therefore, appellant contends, the trial court had no authority to address the issue of whether there had, in fact, been a refusal, and to raise sua sponte the issue of whether the detoxification center test cured respondent's prior refusal. We conclude that the issue was properly raised before the trial court. Respondent's petition for judicial review indicated, in relevant part, that he sought judicial review of the issue that "petitioner did not refuse testing." Respondent's petition for review did state the grounds with specificity in compliance with Minn.Stat. § 169.123, subd. 5c. The trial court did not err in addressing whether respondent had complied with the implied consent statute. *See Eckstein v. Commissioner of Pub. Safety,* 471 N.W.2d 114, 116 (Minn.App.1991), *pet. for rev. denied* (Minn. Aug. 1, 1991).

■ 2. Appellant contends the trial court erred as a matter of law in determining that respondent's submission to the

breath test at the detoxification center cured his earlier refusal. We agree.

■ Any person who drives a motor vehicle is subject to the provisions of the implied consent law and must submit to a chemical test when requested by a peace officer. Minn.Stat. § 169.123, subd. 2(a) (1990). Implied consent laws are remedial statutes, and must be liberally interpreted in favor of the public interest and against the private interest of the drivers involved. *State, Dep't. of Pub. Safety v. Juncewski*, 308 N.W.2d 316, 319 (Minn.1981).

■ The Minnesota Supreme Court has stated the general rule that an initial refusal to submit to testing cannot be cured by a subsequent agreement to be tested. *Nyflot v. Commissioner of Pub. Safety*, 369 N.W.2d 512, 517 n. 4 (Minn.), *appeal dismissed*, 474 U.S. 1027, 106 S.Ct. 586, 88 L.Ed.2d 567 (1985). We have consistently held that a subsequent change of heart does not revoke an initial refusal, even when a relatively short period of time has elapsed between the initial refusal and the reconsideration except for "almost immediate" change of mind. *Schultz v. Commissioner of Public Safety*, 447 N.W.2d 17, 18–19 (Minn.App.1989); *see also Parsons v. Commissioner of Pub. Safety*, 488 N.W.2d 500, 502–03 (Minn.1992) (refusal not revoked when driver changed her mind nine minutes later). A prompt decision to consent to the test is in keeping with the purpose of the statute, which is to protect the public from the hazards of intoxicated drivers. *Anderson v. Commissioner of Pub. Safety*, 379 N.W.2d 678, 681 (Minn. App.1986). Thus, respondent's submission to a breath test at the detoxification center did not cure his initial refusal.

■ Although a peace officer is not required to offer a driver another opportunity to take a test, the officer may offer a second test to cure an earlier refusal. *See, e.g., Anderson v. Commissioner of Pub. Safety*, 441 N.W.2d 126, 128 (Minn.App. 1989); *Smith v. Commissioner of Pub. Safety*, 401 N.W.2d 414, 416 (Minn.App. 1987), *pet. for rev. denied* (Minn. Apr. 29, 1987). However, contrary to the trial court's decision, the circumstances of this case do not support a conclusion that respondent's second test met the requirements of Minn.Stat. § 169.123.

The test taken by respondent at the detoxification center was not given at the direction of a peace officer as required under Minn.Stat. § 169.123, subd. 2(a) (1990). When respondent was taken to the detoxification center, he was urged by Stroshane and Stenehjem that he should have taken the test if he was not under the influence of alcohol. Respondent was not actually offered a second opportunity to submit to a test by a peace officer as were the drivers in *Anderson* and *Smith*. *Anderson*, 441 N.W.2d at 128; *Smith*, 401 N.W.2d at 416. Thus, we must find that the trial court erred as a matter of law in determining that respondent complied with the implied consent law by later submitting to a chemical test at the detoxification center.

■ Even if we were to conclude that a second test was offered to respondent, the test given at the detoxification center was invalid for a number of reasons. First, the test taken by respondent was not performed with an instrument approved in Minnesota. While Minn.Stat. § 169.123, subd. 2(a) does not specify which instrument must be used to determine a person's blood alcohol content, Minn.R. 7502.0420, subpts. 1, 2 (1991) provides that the only approved instruments for analyzing breath samples are the Breathalyzer 900, 900A, and the Intoxilyzer 5000. Both the rule and statute indicate that all tests must be performed on an instrument described in the rules. Respondent failed to offer any substantial evidence that the test instrument used at the detoxification center was one of the breath testing devices enumerated under the rules. Instead, Stenehjem testified the test was a portable breath testing device, which does not meet the implied consent standard for a testing device pursuant to which a license can be revoked. *See id.* Furthermore, respondent did not offer any breath test results into evidence.

■ In addition, the test respondent submitted to was not given by a trained person. Minn.Stat. § 169.123, subd. 3 (1990) requires that a "person administering a breath test shall be fully trained in the administration of breath tests pursuant to training given by the commissioner of public safety." *See also* Minn.R. 7502.0400 (1991) (requiring completion of training course to administer breath tests). Stenehjem is a health care assistant who has been trained to use the instrument for testing alcohol concentration by registered nurses. However, no evidence was submitted indicating that Stenehjem was given training by the Commissioner of Public Safety as required by statute.

■ Finally, no evidence was presented that the test administered to respondent involved the test sequence specified for the Intoxilyzer 5000. Both Minn.Stat. § 169.-123, subd. 2b(a) (1990) and Minn.R. 7502.-0430 (1991) require the test to include two separate, adequate breath samples. Additionally, Minn.R. 7502.0410 (1991) requires that testing procedures be approved and certified as valid and reliable by the head of the Bureau of Criminal Apprehension Laboratory. Again, no evidence was presented that two adequate samples were taken from respondent, or that the detoxification center's breath testing procedures had been approved.

Respondent argues that he cannot be held responsible for determining that the device offered for testing conformed to the requirements of the implied consent statute, but testimony of his witness showed the device was not one authorized under the law. While we are not insensitive to respondent's desire that this court recognize and validate his reliance on the detoxification center test, we cannot do so. To insure accuracy and uniformity in testing, the instrument used should be one enumerated under the Minnesota Rules and the person administering the test should be fully trained and qualified. The purpose of chapter 7502 is:

> to establish minimum standards for administering and interpreting a test for intoxication at the direction of a peace

officer, pursuant to the provisions of Minn.Stat. § 169.123.

Minn.R. 7502.0200 (1991). The trial court clearly erred in finding that respondent submitted to a valid test at the detoxification center.

## DECISION

Respondent's petition for judicial review properly complied with Minn.Stat. § 169.-123, subd. 5c. However, the trial court erred as a matter of law in determining that respondent cured his earlier refusal to submit to a chemical test.

**Reversed.**

RANDALL, Judge, dissenting.

I respectfully dissent and would affirm the trial court. Minn.Stat. § 169.123, subd. 2 (1992) indicates the implied consent test shall be administered at the direction of a peace officer. I agree with the majority that an initial refusal by a driver may not be cured by the driver's subsequent agreement to be tested. *See Parsons v. Commissioner of Pub. Safety*, 488 N.W.2d 500, 502–03 (Minn.1992). I also agree that a police officer is not required to offer a driver a second opportunity to be tested. *Palbicki v. Commissioner of Pub. Safety*, 347 N.W.2d 512, 515 (Minn.App.1984). However, Minnesota law recognizes a police officer may offer the driver an opportunity to cure the refusal. *Anderson v. Commissioner of Pub. Safety*, 441 N.W.2d 126, 128 (Minn.App.1989); *Smith v. Commissioner of Pub. Safety*, 401 N.W.2d 414, 416 (Minn.App.1987), *pet. for rev. denied* (Minn. Apr. 29, 1987).

I agree with the trial court that here, taken in the context of the entire factual setting, respondent's initial refusal was cured by subsequent actions. Respondent was stopped while driving, transported to the police station, read the implied consent advisory, and asked to submit to a breath test. He requested to use a bathroom before proceeding. Officer Gjerde refused his request. Respondent is a medical student from Nigeria. This incident occurred during the week of the Rodney King trial. Respondent testified he refused to submit

to the test because he feared he would not receive a fair result. Officer Gjerde recorded respondent's refusal and then transported him to the Hennepin County Detoxification Center. An off-duty Minneapolis police officer, Sergeant Earl Stroshane, was working security at the center. Sergeant Stroshane was in his Minneapolis police uniform. After observing respondent, Stroshane came to the conclusion he might not be under the influence and encouraged respondent to take a test. There is nothing in the record to indicate respondent assumed the uniformed officer at the detoxification center had any different authority than the first officer who talked to him.

In essence, the trial court found that the State of Minnesota offered respondent a chance to cure the earlier refusal, which respondent took. I leave to the trial court to decide the weight and credibility to give respondent's and Officer Stroshane's version of the facts. Both testified, and the trial court, as factfinder, is owed great deference in assessing their credibility. I see no reason to interfere with the trial court's judgment call that respondent cured his earlier refusal after being given the opportunity by another officer clothed with apparent authority.

On the second issue, the type of test respondent took at the center, the majority holds that the rule and the statute require that all tests must meet the requirements of the rules. I disagree. A *driver* is not going to know what tests meet the technical requirements. The burden of producing a proper test is on the *state* when attempting to revoke a citizen's driving privileges. Respondent should not be penalized because the test he consented to take from a police officer did not meet the technical standards of the rules. A driver should not be penalized because the state offers a test, the driver takes it, and later another arm of the state says, "Well, that was not a proper test." Disputes may arise between the state and a driver as to credibility of a test result, or even its ad-

missibility. But the state cannot claim a driver's consent to take a test, which is offered by a law enforcement officer and later ruled invalid because of foundation problems, *amounts to a refusal.* Common sense tells us the state cannot retroactively call honest consent a refusal because the offeror, the state, did not have a valid test in hand.

To understand this, just reverse the order of the tests. Assume that Officer Gjerde had initially offered respondent the exact same test that he took later at the detoxification center. If the issue of the test's validity arose, the state could not argue that respondent's consent to take the test is now a "refusal," with all the serious implications a test refusal carries, because Gjerde offered something other than the Breathalyzer 900 or 900A, or the Intoxilyzer 5000.

Appellant further argues that somehow Stenehjem's lack of training by the Commissioner of Public Safety in the administration of breath tests bolsters respondent's "refusal." Apply the same logic. Assume that Gjerde's training had been the same as Stenehjem, the health care assistant. The state would look foolish claiming that respondent's consent to a test offered by Gjerde is a refusal because Gjerde had not received training approved by the Commissioner. Again, the validity or admissibility of the test administered by Stenehjem may be an issue, but the issue cannot be "refusal."

This case only has one issue. From the totality of the facts, did the trial court erroneously find the state exercised its option to give a driver a second chance to cure an earlier refusal? I find no error, and would affirm the trial court.