*This opinion is nonprecedential except as provided by Minn. R. Civ. App. P. 136.01, subd. 1(c).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A25-0735**

Robert Daniel Mesenburg, petitioner,
Appellant,

vs.

Commissioner of Public Safety,
Respondent.

**Filed November 24, 2025
Affirmed
Schmidt, Judge**

Crow Wing County District Court
File No. 18-CV-24-3743

Charles A. Ramsay, Daniel J. Koewler, Ramsay Law Firm, P.L.L.C., Roseville, Minnesota (for appellant)

Keith Ellison, Attorney General, Zoe Graham, Assistant Attorney General, St. Paul, Minnesota (for respondent)

Considered and decided by Bratvold, Presiding Judge; Schmidt, Judge; and Bentley, Judge.

**NONPRECEDENTIAL OPINION**

**SCHMIDT**, Judge

Respondent Commissioner of Public Safety revoked appellant Robert Daniel Mesenburg's driver's license based upon a finding that he refused to submit to a breath test after his arrest for driving while impaired. Mesenburg petitioned the district court to rescind the revocation of his license. The district court denied the petition. We affirm.

**FACTS**

A police officer arrested Mesenburg on suspicion of driving while impaired and transported him to the county jail for a breath test. The jail uses a DataMaster DMT breathalyzer instrument, which gives a driver three minutes to provide a breath sample. At the end of the three-minute cycle, the instrument indicates whether the sample was adequate or deficient. An adequate sample satisfies the necessary "sample acceptance criteria," including minimum breath volume and flow rate.

According to the Bureau of Criminal Apprehension (BCA) training manual, before beginning a three-minute cycle, the law-enforcement officer administering the breath test must first observe the driver for 15 minutes. The purpose of this observation period is to ensure that the driver does not eat, drink, burp, vomit, or have anything in their mouth, each of which can impact the test results.

Mesenburg verbally agreed to take a breath test. A sergeant observed Mesenburg for 15 minutes. At the end of the observation period, the sergeant explained to Mesenburg how the DMT instrument works and instructed him on how to provide a breath sample: "[S]eal your lips around the tube. Take a nice deep breath in. Blow out nice and steady like you're blowing up a balloon." After an attempt by Mesenburg, the sergeant instructed him that he cannot stop blowing into the device. Mesenburg responded that his lawyer told him that "eight seconds is all [Mesenburg] need[ed]." The sergeant replied, "[N]ope. You've got to blow all the air out of your lungs[,] . . . take a nice deep breath in and blow continuously steady through this tube until you run out of air in your lungs." The following dialogue took place throughout the remainder of the three-minute test cycle:

2

SERGEANT:  You're not blowing at all.

MESENBURG:  I am.

SERGEANT:  No, you're not.

SERGEANT:  You're not blowing.

SERGEANT:  Nope.  You're not giving long enough breaths.

SERGEANT:  Okay.  You got to take a nice big deep breath in . . . .  And blow out.

SERGEANT:  You're blowing in and out.  And what it's gonna do it's gonna time itself out.

MESENBURG:  I'm not blowing—I'm not blowing in when I'm doing it though.  Right?

SERGEANT:  What do you mean?  You have to take a deep breath—

MESENBURG:  No, no, no, no, no.  I know that.

SERGEANT:  —Seal your lips, and blow into the tube.

MESENBURG:  That's what I've been doing.

SERGEANT:  You're not blowing.

MESENBURG:  I have been blowing.

SERGEANT:  Barely.

MESENBURG:  All right let's do it again.

SERGEANT:  . . . You're starting and stopping.  Yes, you are. I can see it on the test.  One hundred percent.

MESENBURG:  Dude, I'm telling you—

SERGEANT:  I'm telling you this is gonna time out.  Okay.

MESENBURG: Okay, let's do it. Let's go.

SERGEANT: And then this is gonna give me a deficient test.

After the three-minute cycle ended, the DMT instrument reported that Mesenburg's breath sample was deficient.

During an exchange between cycles, the sergeant stated, "It's no hair off of me if you wanna try and manipulate this test." The sergeant explained that if he did not obtain two adequate breath samples from Mesenburg, Mesenburg would be charged with refusal to submit a chemical test. The sergeant also stated, "Based on all my training of using this machine, that is someone right there trying to manipulate the test." Mesenburg responded that he was trying, that he had never taken a breath test before, and that the sergeant's allegation was "very false," "hearsay all day . . . times a thousand," "dumb," and "stupid."

The sergeant began a second 15-minute observation period. During this period, Mesenburg burped. The sergeant restarted the observation period and told Mesenburg that they would need to wait longer before taking another breath sample, adding, "Do not try to do that again." About six minutes later, Mesenburg burped again. The sergeant restarted the observation period and said, "You're trying to delay this test. . . . Every time you do that, I have to start my observation period over."

After a successfully completed 15-minute observation period, the sergeant began another breath-test cycle. During this cycle, Mesenburg provided longer breath attempts than the first cycle. Still, the sergeant twice instructed Mesenburg to take a "deeper breath in" and "bigger," "longer" breaths out. About one minute and 30 seconds into the cycle, Mesenburg took a 30-second break from blowing to catch his breath. When the sergeant

4

prompted him to provide another breath attempt, Mesenburg told the sergeant that he had just burped. The sergeant then said, "All right. We're done."

Mesenburg and the sergeant then had the following exchange:

> MESENBURG: No, we're not. You just had me blow for like 8,000 seconds.
>
> . . . .
>
> MESENBURG: What do you mean? I thought we were done. How many times do I have to blow? How many times do I have to blow? I blowed [sic] like four f---ing times dude.
>
> . . . .
>
> MESENBURG: That's bulls---. I already talked to my lawyer. He said you have to hold for eight seconds. Twice. Twice. Eight seconds, twice.
>
> . . . .
>
> MESENBURG: Did I pass?
>
> SERGEANT: You did not pass.
>
> MESENBURG: I did pass. I know I did. There's no way I didn't. You had me blow four times for 10 seconds. And you don't get sufficient results off of that? Explain that to me.
>
> SERGEANT: I just told you that.
>
> MESENBURG: Four times for 10 seconds isn't sufficient results.
>
> SERGEANT: No.
>
> MESENBURG: That's bulls--- and you know that.
>
> SERGEANT: I clearly believe that you are trying to delay the test.

5

MESENBURG: No, that is so false. Very false. You just don't like the results you got. Because I'm sober now.

As Mesenburg continued arguing, the instrument reported that Mesenburg's breath sample was deficient. After one hour and twelve minutes of attempting to collect an adequate breath sample, the sergeant stopped testing due to Mesenburg's conduct and behavior.

The Commissioner of Public Safety revoked Mesenburg's driver's license. Mesenburg filed a petition for judicial review, requesting that the district court rescind the revocation. Mesenburg argued, in relevant part, that (1) the sergeant did not administer the breath test correctly or in a trustworthy manner to allow Mesenburg to have a reasonable opportunity to provide a breath sample; and (2) his actions did not constitute a refusal.

The district court held a hearing on Mesenburg's petition. The court heard testimony from the arresting officer; the sergeant who administered Mesenburg's breath test; a BCA forensic scientist; and a forensic toxicology consultant. Both the sergeant and the consultant testified that the BCA trains law-enforcement officers to begin a new observation period if a driver burps.

The district court also accepted several exhibits into evidence, including: the sergeant's body-worn camera footage that recorded the entire breath test; the test records showing Mesenburg's breath sample results; the BCA's DataMaster DMT training manual; the BCA's DataMaster DMT training presentation; and a flip chart that provides instructions to a DMT operator in the event of a testing issue.

The district court denied Mesenburg's request for rescission of the revocation of his driver's license. The district court determined that Mesenburg had refused the breath test

6

through his conduct: "[t]he totality of the evidence . . . indicate[d] that [Mesenburg] was attempting to delay the testing process[.]" The district court found that Mesenburg did not follow the sergeant's instructions and that when the sergeant attempted to correct Mesenburg, he was "belligerent and argumentative." The district court also cited Mesenburg's statements that his lawyer told him he only needed to blow for eight seconds, his statement at the end of the test that he was "sober now," and his repeated burping.

Mesenburg appeals.

## DECISION

Mesenburg argues that the district court erred by denying his petition to rescind the revocation of his driver's license because the sergeant did not properly administer the breath test. We review a district court's finding that a driver has refused to submit to a breath test for clear error. *Stevens v. Comm'r of Pub. Safety*, 850 N.W.2d 717, 722 (Minn. App. 2014). A factual finding is "clearly erroneous" if it is "manifestly contrary to the weight of the evidence or not reasonably supported by the evidence as a whole." *In re Civ. Commitment of Kenney*, 963 N.W.2d 214, 221 (Minn. 2021) (quotation omitted).

When a law-enforcement officer has probable cause to believe that a person was driving while impaired, the officer may request that the driver submit to a test of their breath, blood, or urine. Minn. Stat. § 169A.51, subd. 1(b) (2024). If the driver "refuses to permit a test," the officer must report the driver's refusal to the Commissioner of Public Safety, who "shall revoke the [driver's] license." Minn. Stat. § 169A.52, subds. 1, 3(a) (2024). A driver refuses chemical testing when, based on the totality of the circumstances, their words and actions "indicat[e] . . . actual unwillingness to participate in the testing

7

process."[1]  *State v. Ferrier*, 792 N.W.2d 98, 102 (Minn. App. 2010), *rev. denied* (Minn. Mar. 15, 2011).

In *Sigfrinius v. Commissioner of Public Safety*, for example, the driver agreed to take a breath test but did not remove mints from his mouth despite being told to do so numerous times.  378 N.W.2d 124, 125-27 (Minn. App. 1985).  The district court found that the driver's conduct was "specifically calculated to avoid suspension of his driver's license." *Id.* at 126.  We affirmed, holding that the driver's actions amounted to an attempt to frustrate the testing process, which constituted a refusal.  *Id.*  *See also Connolly v. Comm'r of Pub. Safety*, 373 N.W.2d 352, 353-54 (Minn. App. 1985) (concluding that the driver refused to permit a breath test when he verbally agreed to the test but blew around the instrument's mouthpiece instead of into it).

Here, there is considerable evidence in the record that reasonably supports the district court's findings that, based on the totality of the circumstances, Mesenburg attempted to frustrate the testing process and that his conduct amounted to a refusal.  The sergeant testified—and the body-worn camera footage of the breath test shows—that he repeatedly instructed Mesenburg on how to provide a breath sample and that Mesenburg consistently failed to follow instructions.  Instead, Mesenburg provided short bursts of air into the machine and sometimes was not blowing at all.  The same footage shows that Mesenburg burped three separate times—twice after he was informed that burping required the sergeant to restart his 15-minute observation period.  The video also shows that

---

[1] A driver can also "refuse" a test as a matter of law when their breath samples fail to satisfy the statutory requirements for a breath test.  Minn. Stat. § 169A.51, subd. 5 (2024).

Mesenburg stated, two separate times, that his lawyer said he only had to blow into the machine for eight seconds. And following an exchange in which the sergeant stated that he thought Mesenburg was trying to repeatedly delay the test, Mesenburg said: "No, that is so false. Very false. You just don't like the results you got. Because I'm sober *now*." (Emphasis added.) This evidence supports the finding that Mesenburg attempted to frustrate the testing process, which our caselaw recognizes as constituting a refusal. *Sigfrinius*, 378 N.W.2d at 127. The district court's finding that Mesenburg's conduct amounted to a refusal to permit chemical testing is not clearly erroneous.

Mesenburg insists that the totality of the circumstances surrounding his conduct cannot be considered because the sergeant improperly stopped the test after Mesenburg burped. According to Mesenburg, the BCA manual required the sergeant to restart the 15-minute observation period. Alternatively, Mesenburg offers that the sergeant could have switched to a blood or urine test after obtaining a warrant.

But the implied-consent statute includes no such requirements. *See* Minn. Stat. § 169A.51 (2024). If the totality of the circumstances demonstrates that an individual's conduct amounts to a test refusal, the statute does not require the person administering the breath test to obtain a warrant for a blood or urine test. *Id.* The statute also does not require the person administering a breath test to perpetually administer a test when a driver repeatedly attempts to delay, manipulate, or frustrate the test. *Id.*[2]

---

[2] Mesenburg relies heavily on the BCA's training manual to argue that the sergeant failed to properly administer the test. The BCA's training manual is not, however, the law. A deviation from the BCA's training manual may be relevant in the analysis of whether the

Instead, the caselaw consistently holds that a driver's words and actions can indicate an "actual unwillingness to participate in the testing process." *See, e.g.*, *Ferrier*, 792 N.W.2d at 102. The caselaw does not require a particular event to occur before the person administering the breath test decides that the individual's conduct amounts to a test refusal. The totality of these circumstances fully supports the district court's finding that Mesenburg's conduct—which occurred throughout more than an hour of attempting to administer the breath test—amounted to a test refusal.

Mesenburg cites two cases to argue that the breath-test instrument, not the administering officer, must determine the adequacy of a breath sample: *Huber v. Commissioner of Public Safety*, 382 N.W.2d 573, 574-75 (Minn. App. 1986) (affirming district court's decision to rescind revocation where breath test stopped before the first four-minute cycle ended based upon officer's subjective belief that drivers were not making a good-faith effort to blow into testing instrument); and *Genia v. Commissioner of Public Safety*, 382 N.W.2d 284, 286-87 (Minn. App. 1986) (same). Given the circumstances of this case, *Huber* and *Genia* are distinguishable.

Here, the district court's finding that Mesenburg refused to permit a breath test was not—like in *Huber* and *Genia*—based solely on the sergeant's subjective belief that Mesenburg failed to make a good-faith effort to provide an adequate breath sample within the first testing cycle. Instead, the district court's finding that Mesenburg's conduct amounted to a test refusal was based on the totality of the entire one-hour-and-twelve-

totality of the circumstances supports a finding of a test refusal. But we decline Mesenburg's invitation to give the BCA's training manual the full force and effect of law.

minute interaction, which included: the sergeant repeatedly restarting his observation period due to Mesenburg's burping, Mesenburg refusing to follow instructions and telling the sergeant that he only had to blow into the instrument for eight seconds based upon his lawyer's advice, Mesenburg continually arguing with the sergeant, and Mesenburg saying he was "sober now" near the end of the interaction. The district court did not clearly err in determining that, based upon the totality of the circumstances, Mesenburg refused to submit to a breath test.

**Affirmed.**