STATE of Minnesota, DEPARTMENT OF PUBLIC WELFARE, Appellant,

v.

JoAnn THIBERT, Individually and as trustee of the Robert E. Hance Trust and as Representative of the Estate of Irene J. Hance, the Robert E. Hance Trust, and the Estate of Irene J. Hance, Respondents.

No. 48278.

Supreme Court of Minnesota.

April 6, 1979.

Rehearing Denied June 18, 1979.

Warren Spannaus, Atty. Gen., Paul G. Zerby, Asst. Atty. Gen., Tibor M. Gallo, Sp. Asst. Atty. Gen., St. Paul, for appellant.

Dickel, Johannson, Wall & Taylor and Kenneth F. Johannson, Crookston, for respondents.

Heard before PETERSON, YETKA, and STONE, JJ., and considered and decided by the court en banc.

BRUCE C. STONE, Justice.*

This appeal by plaintiff, State of Minnesota, Department of Public Welfare (state),

---

* Acting as Justice of the Supreme Court by appointment pursuant to Minn.Const. art. 6, § 2, and Minn.St. 2.724, subd. 2.

is from the judgment of the district court that the assets and property held in the Robert E. Hance Trust are not subject to plaintiff's claim for hospital charges allowed against the Irene J. Hance Estate. We affirm.

The essential facts giving rise to the controversy are chronologically stated:

### The Hance Property.

Robert and Irene Hance, as husband and wife, purchased a 160-acre tract of Red Lake County farmland in 1943. Robert Hance paid the purchase price; the deed listed Robert and Irene as joint tenants.

The Hances lived, worked, and raised a family together on their purchased tract. The "homestead" consisted of 80 acres; the remaining 80 acres were farmed. Throughout the years, Robert purchased necessary farm implements and machinery.

### The State's Claim.

At various times from 1958 to 1972, Irene was a patient in various state hospitals, suffering from depression. Pursuant to Minn.St. 246.51, Robert, as Irene's relative, was billed for $\frac{1}{10}$th of the total cost of Irene's care. Robert timely paid the entire sum billed during his lifetime. There was no evidence indicating that the Hances were aware that, upon Irene's death, the remaining $\frac{9}{10}$ths of the cost of her care would mature as a claim against her estate under Minn.St. 246.53.

### The Robert E. Hance Trust.

On September 2, 1972, Robert Hance spent the day helping a neighbor with the harvest. Driving his combine on his way home, Robert collided with a passing grain truck. The accident resulted in critical injuries to Robert. The truck driver and his female passenger were injured, and there was extensive property damage to both vehicles. From his hospital bed, Robert called his attorney for advice concerning disposition of his property in light of his uncertain future.

Attorney and client weighed the following considerations:

(a) Robert feared he might die soon from injuries sustained in the collision or from the consequent aggravation of his chronic heart condition.

(b) Robert had not executed a will. He considered Irene unable to control any wealth that would remain should he predecease her. Irene had, at that point, a 14-year medical history of treatment for depression. According to her daughter, Irene had no concern for material things.

(c) Robert faced possible liability for substantial personal injuries and property damage as a result of the accident. At the time of the collision, he had retired from farming and had allowed his liability insurance to lapse.[1]

With the above considerations in mind, the attorney suggested that an inter vivos trust would be an appropriate means of satisfying Robert's concerns. At the same time, he warned Mr. Hance of the possible detrimental effect if a court were to deem the trust's creation an attempt to insulate assets from possible liability arising out of the accident. Having thus been advised and cautioned, Mr. Hance decided to go ahead with the creation of the trust.

Robert and Irene Hance created the Robert E. Hance Trust by trust agreement, deed, and bill of sale on October 10, 1972.[2] By the terms of the documents (signed by both Robert and Irene), all of the Hances' property, except the 80-acre homestead tract with its home and farm buildings, was transferred to the trust "for one dollar and other valuable consideration." JoAnn Thi-

---

1. Robert Hance's attorney did advise him that he might be covered under the liability insurance policy of the neighbor whom Robert was helping on the day of the accident. As events developed, however, Robert obtained a favorable out-of-court settlement from the trucker—enough to replace his combine.

2. The deed transferring title of the Hance property to the trust was recorded on October 16, 1972. The trust agreement was not recorded until December 26, 1975, more than a year after the deaths of Robert and Irene.

bert, the Hances' daughter, was appointed trustee. Robert and Irene were lifetime beneficiaries. As trustee, JoAnn was to manage the property and distribute the property's income and, if necessary, principal to Robert and Irene during their lifetimes.[3] Upon the death of the last to die, she was to distribute the remaining principal in equal shares to the Hances' three children.

Robert died on October 28, 1974, and Irene died on December 15, 1974. The state filed its claim for the unpaid balance of the cost of Irene's care in state hospitals as a late claim against the Irene Hance Estate in May 1975.

In January 1976, the judge of county probate court heard the state's claim against Irene's estate and subsequently allowed the full amount of the claim. However, the proposed final account and petition for settlement, submitted by JoAnn Thibert as personal representative of her mother's estate, listed as the estate's only assets a contribution of $3,775.65 from the Robert E. Hance Trust. That contribution was exactly enough to pay all outstanding expenses, except the state's claim for the cost of Irene's medical care.

The state objected to the final account in the county court and filed suit in district court against the Irene Hance Estate, the Robert E. Hance Trust, and against JoAnn Thibert, individually and in her capacities as trustee and representative of her mother's estate. The state challenged the validity of the conveyance to the trust of the nonhomestead property held in joint tenancy. The trial judge adjudicated the case upon a stipulated record. The state now appeals from the order and judgment dismissing its complaint, including its request for attorneys' fees, and granting costs and disbursements to defendants.

Appellant proceeds upon two basic theories: (1) that the 1972 conveyance of the property to the trust should be invalidated as a fraudulent conveyance in violation of the Uniform Fraudulent Conveyances Act (UFCA), Minn.St. 513.20–513.32, and (2) that the trust and the conveyance of property which created it should be invalidated for failure to timely record the trust instrument under Minn.St. 507.35. Respondents counter that (1) Irene had no ownership interest in the jointly held real property (the consequence being that the property, not being "owned" by Irene, never was subject to the state's claim); and (2) even if Irene did have an ownership interest in the property, she effectively and nonfraudulently alienated that interest in 1972 to the Robert E. Hance Trust. This would leave in her estate only her interest in the homestead, which is statutorily exempt from levy on the state's claim.

The issues thus presented are:

1. Did the conveyance to the trust violate the Uniform Fraudulent Conveyances Act (UFCA)?

2. Was the conveyance void for failure to timely record the trust agreement?

3. Did Irene Hance have any "legal interest" in the real property held by her and Robert as joint tenants?

4. Is the state entitled to attorneys' fees and exemplary damages?

On appeal, the trial court's findings of fact must be affirmed if reasonably supported by the evidence, *Peterson v. Johnston*, Minn., 254 N.W.2d 360 (1977); i. e., unless clearly erroneous, *In re Trust Known as Great Northern Iron Ore Properties*, 308 Minn. 221, 243 N.W.2d 302 (1976), certiorari denied sub nom. *Arms et ux. v. Watson, Trustee, et al.*, 429 U.S. 1001, 97 S.Ct. 530, 50 L.Ed.2d 612 (1976). The evidence and its reasonable inferences must be viewed in the light most favorable to the prevailing party, *Theisen's Inc. v. Red Owl Stores, Inc.*, 309 Minn. 60, 243 N.W.2d 145 (1976).

---

3. Despite JoAnn's putative control of the trust property, Robert seemed to exercise actual control over disbursements and expenditures during his lifetime, as evidenced by the numerous trust checking account record entries in his hand. However, none of Robert's expenditures appear to have violated the uses of the trust funds permitted by the terms of the trust agreement.

1. It is first necessary to determine whether the plaintiff has brought itself within the protection of the Uniform Fraudulent Conveyances Act, Minn.St. 513.-20–513.32, which reads in pertinent part:

"Every conveyance made and every obligation incurred by a person who is or will be thereby rendered insolvent is fraudulent as to creditors without regard to his actual intent if the conveyance is made or the obligation is incurred without a fair consideration." Minn.St. 513.-23.

"Every conveyance made and every obligation incurred without fair consideration when the person making the conveyance or entering into the obligation intends or believes that he will incur debts beyond his ability to pay as they mature, is fraudulent as to both present and future creditors." Minn.St. 513.25.

"Every conveyance made and every obligation incurred with actual intent, as distinguished from intent presumed in law, to hinder, delay, or defraud either present or future creditors, is fraudulent as to both present and future creditors." Minn.St. 513.26.

Reading the statutory provisions together, the conveyance can be set aside as fraudulent only if (a) in making the conveyance to the trust, Irene had an actual intent to defraud present or future creditors, § 513.26; (b) the conveyance was without fair consideration and rendered Irene insolvent, and the state is a "creditor" as used in § 513.23; or (c) the conveyance was without fair consideration and Irene knew or believed that she would incur debts beyond her ability to pay as they matured, § 513.25.

■ (a) The fraudulent intent required under § 513.26 was not established. The state made no showing that Irene's intent was to defraud any present or future creditor. The state did not argue that Irene's intent was fraudulent as to it. Nor did the state introduce any evidence to show that either Irene or Robert had notice of its unmatured claim against Irene's estate. Assuming arguendo that there was fraudulent intent as to Robert's potential creditors

arising from the accident (creditors which never materialized, see, infra, note 1), the conveyance could be set aside under § 513.-26 only by *his* future creditors, not those of Irene. Thus, the conveyance may not be set aside under § 513.26.

■ (b) Under § 513.23, assuming that Irene conveyed her property to the trust without fair consideration and that she was rendered insolvent by the conveyance, the state still must fall within the ambit of protected "creditors." We take "creditors," as used in § 513.23, to mean creditors existing at the time of the conveyance. That excludes the state, which at that time had at most an unmatured claim against Irene's estate under Minn.St. 246.53. This interpretation corresponds to the pre-UFCA law in Minnesota, where a voluntary conveyance by an insolvent, presumptively fraudulent as to existing creditors, was not fraudulent as to future creditors in the absence of fraudulent intent. See, Bridgman, *Uniform Fraudulent Conveyance Act in Minnesota,* 7 Minn.L.Rev. 453, 531, n. 57, citing *Coulter v. Meining,* 143 Minn. 104, 172 N.W. 910 (1919); *Sovell v. Lincoln County,* 129 Minn. 356, 152 N.W. 727 (1915); *Walsh v. Byrnes,* 39 Minn. 527, 40 N.W. 831 (1888). The state was not a creditor of Irene at the time of the conveyance, and thus may not set it aside under § 513.23.

■ (c) The state made no showing that Irene, at the time of the conveyance, knew or believed that she would incur debts beyond her ability to pay as they matured. As mentioned above, it introduced no evidence that Irene had notice of its unmatured claim against her estate. Thus, the state may not set aside the conveyance under § 513.25.

We hold, therefore, that the conveyance of the nonhomestead property to the Robert E. Hance Trust was not fraudulent as to the state under the UFCA. Irene had no intent to defraud the state or any other creditor; Robert's intent under § 513.26 is irrelevant, because the state is not a credi-

58

tor of Robert or his estate.[4] There was no showing under § 513.25 that Irene believed she would incur debts beyond her ability to pay as they matured. Finally, the state is not protected under § 513.23 because it was not a creditor of Irene at the time of the conveyance.

2. The state next proposes that the conveyance of the property to the trust was ineffective until the trust agreement was filed on December 26, 1975. Consequently, the state contends, no trust existed until *after* Irene's death (if at all), and the property in question was an asset of the Irene Hance Estate upon maturation of the state's claim. The state bases its argument on Minn.St. 507.35, which reads:

"When any instrument, otherwise legal, affecting the title to real estate situate in this state, granting any interest therein to or evidencing any lien thereon in favor of any person, as trustee, shall be recorded in the office of the county recorder, or filed in the office of the registrar of titles, of the county in which such real estate is situate, and the powers of such trustee and the beneficiary of such trust are not set forth in the instrument expressly or by reference to an instrument so recorded or filed such designation of such grantee, as trustee, may be disregarded and shall not be deemed to give notice to any person of the rights of any beneficiary under such trust in the real estate unless and until an instrument defining or conferring such powers of such trustee and designating the beneficiary thereunder, with a certificate attached executed by the trustee in the same manner as deeds are required to be executed by the laws of this state describing such instrument so granting an inter-

est or evidencing a lien and stating that the same is held subject to the provisions of such trust, shall be so recorded or filed after such recording or filing of such instrument granting the interest in or evidencing such lien on the real estate."

■ This statute protects subsequent purchasers against prior conveyances where the instrument recorded contains inadequate notice of trustee powers and beneficiary rights which affect the title to real estate. Here, where the deed to the trust was timely recorded, the state did have adequate notice of the transfer of title and interest for purposes of its rights as a creditor. There is no evidence in the record that the state attempted to examine title to the Hance property at any time before it filed its late claim, nor does the state indicate that it was otherwise prejudiced or misled about title to the Hance property. The statute is inapplicable to plaintiff's claim in this case.

■ 3. It becomes unnecessary to examine the trial court's holding that Irene did not have "an equitable interest or ownership" in the property transferred. Absent a prior fraudulent conveyance, Irene's estate did not contain assets to pay plaintiff's claim, even if it had been found that she did have an interest in the property conveyed.[5]

4. From our affirmance of the trial court's dismissal of the state's complaint, it follows that the state is not entitled to attorneys' fees or exemplary damages.

The decision reached here is necessarily confined to the narrow facts that were presented to the trial judge, and as thus

---

4. Because we hold that the state could set aside the conveyance under Minn.St. § 513.26 only on the basis of Irene's intent, not Robert's, and that no showing was made of Irene's fraudulent intent, it is unnecessary to discuss *Neilson v. Larson,* 158 Minn. 305, 197 N.W. 259 (1924), cited by respondent, and *Themo v. Themo,* 296 Mass. 190, 5 N.E.2d 26 (1936), cited by appellant.

5. Although it is not necessary to decide this issue in this case, there seems to be no doubt

that a joint tenant has legal rights and powers with respect to the parcel held in joint tenancy. See, *Dorsey v. Dorsey,* 142 Minn. 279, 281, 171 N.W. 933, 934 (1919) ("Where two persons are named grantees in a deed, the presumption is that their interest in the land conveyed is equal."); Minn.St. 557.06 (right of joint tenant to sue cotenant for receiving more than his just proportion of rents and profits of the estate); 10A Dunnell, Dig. §§ 4950–4952b.

confined it cannot be said that his decision was clearly erroneous.

Affirmed.

OTIS, J., took no part in the consideration or decision of this case.