CITIZENS STATE BANK OF
HAYFIELD, Respondent,

v.

Erling LETH, et al., Appellants.

No. C0–89–1435.

Court of Appeals of Minnesota.

Jan. 23, 1990.

Steven C. Youngquist, Rochester, for appellants.

Paul J. Kiltinen, Weber Law Offices, Dodge Center, for respondent.

Heard, considered and decided by RANDALL, P.J., and PARKER and SCHUMACHER, JJ.

## OPINION

PARKER, Judge.

Erling Leth, a debtor of respondent Citizens Bank of Hayfield, appeals a trial court judgment voiding, as violative of the Uniform Fraudulent Transfer Act (UFTA), a transfer of his land to a family trust, thus causing the land to revert to Leth subject to a prior lien in favor of the bank. We affirm.

## FACTS

In 1981 Erling Leth and two others started an alcohol conversion business called Zumbro Valley Alcohol and Feed Co., Inc. (Zumbro). Citizens Bank of Hayfield (bank) made loans to them of $450,000 and $100,000 in December 1981 and 1983 respectively, which were 90 percent guaranteed by the Small Business Administration (SBA). The bank obtained personal guarantees from Leth for $250,000 of these loans. He put up 80 acres of farmland as collateral for the $450,000 loan.

In 1981 Leth submitted to the bank a signed financial statement which put a value of $270,000 on the total 270 acres of land listed therein. This acreage includes the 80 acres given as collateral, his 80–acre homestead and the 110–acre tract which is the focus of this suit. In 1983 he also signed a personal guarantee on an additional $25,000 loaned from the bank to Zumbro. A bank officer informed Leth when he signed for the loans that he could be held personally liable on his guarantees. The latter loan was not guaranteed by the SBA and was due on January 6, 1984. The 1983 loans were taken out due to the precarious financial situation of Zumbro, which was never stable or secure.

By early 1984 the bank considered Zumbro to be insolvent and repeatedly met with the Zumbro principals, including Leth, to try to salvage the situation through bringing in new owners. In May 1984 the bank called in the SBA loan guarantees, which resulted in the SBA taking them over.

In May 1984 an estate planner, Romeo Cyr, suggested a plan transferring the 110–acre tract from Erling Leth to his son, Donald Leth, on a contract for deed. In this written plan, one of two "areas of concern" raised was "b. Involvement of Erling in the Alcohol Plant—again resulting in added risk to the Leth farm."

On May 25, 1984, Leth, pursuant to a $2,000 personal loan from the bank, submitted a financial statement with his 270 acres valued at $485,000. This financial statement also referred to Leth's guarantee of the Zumbro loans. Five days after signing this financial statement, Leth transferred the 110 acres to a family trust, which in turn sold the land to Donald by contract for deed. The price was listed as $100,000, but the $20,000 downpayment was given to Donald by Leth and his wife, Catherine. The trust is revocable by Erling Leth, a beneficiary, and Catherine Leth, who is both a beneficiary and the trustee. The contract for deed provides for regular payments to the trust; any payments from it are discretionary with the trustee. The family trust was drafted by attorney Robert Ward working with Romeo Cyr and based on Cyr's proposal.

In August or September 1984 the bank asked Leth to perform on his personal guarantee of the $25,000 loan due the previous January. One year later, in August 1985, Leth executed two promissory notes for the $25,000 loan and $2,440 in interest. The bank obtained judgment on the notes in December 1986, but has yet to collect anything.

In the period between March and September 1984, Leth paid funds into Donald's checking account from his own checking account, for the purpose of avoiding an attachment by the IRS due to unpaid taxes by Zumbro. Leth then used the funds in

Donald's account to pay off $5,000 of Zumbro bills.

In 1986 Leth filed another financial statement with the bank. He did not list any income from the trust therein, though Donald testified that he was current in his payments on the contract.

In May 1988 the bank filed a complaint asking the trial court to void the transfer of the 110 acres to the trust and to order the sale of the land, applying the proceeds to the amount adjudged due the bank from Leth. On May 31, 1989, the trial court declared the transfer void as violative of Minn.Stat. § 513.44 and thus subject to all liens incurred prior to the May 1984 transfer.

## ISSUES

1. Did the trial court err in determining that the transfer violated Minn.Stat. § 513.44, subd. (a)(2)(i), finding that Leth did not receive a reasonably equivalent value in exchange for the land and that he was then engaged in a business (Zumbro) for which his remaining assets were too small in relation thereto?

2. Did the trial court err in finding a violation of Minn.Stat. § 513.44, subd. (a)(2)(ii), in concluding that Leth also believed or should have believed that he would, after the land transfer, incur debts beyond his ability to pay as they came due?

3. Did the trial court err in finding a violation of Minn.Stat. § 513.44(a)(1), by concluding that Leth made the transfer to the trust with actual intent to hinder or defraud any of his creditors?

## DISCUSSION

■ On appeal from a judgment, this court's scope of review is limited to deciding whether the trial court's findings are clearly erroneous and whether it erred in its legal conclusions. *Gruenhagen v. Larson*, 310 Minn. 454, 458, 246 N.W.2d 565, 569 (1976); *Hardwick v. Hansen*, 374 N.W.2d 297, 299 (Minn.Ct.App.1985). When the trial court's findings are reasonably supported by the evidence, they are not clearly erroneous and must be af-

firmed. *Hilton v. Nelsen*, 283 N.W.2d 877, 881 (Minn.1979); *see also* Minn.R.Civ.P. 52.-01.

### I

■ According to Minn.Stat. § 513.44(a)(2)(i) (1988), a transfer made by a debtor is fraudulent as to a creditor if the debtor made the transfer

* * * * * *

(2) without receiving a reasonably equivalent value in exchange for the transfer * * * and the debtor:

(i) was engaged or was about to be engaged in business * * * for which the remaining assets of the debtor were unreasonably small in relation to the business * * *.

Leth asserts that the $100,000 price (or only $80,000 disregarding the gifted downpayment) he received was a reasonable amount for the land. Leth also asserts that the 1984 financial statement's valuation of $485,000 for the 270 acres, or $200,000 for the 110 acres, is wrong. He testified that he did not supply that value or write it in. Assuming this to be true, the fact remains that he signed the financial statement personally and filed it only five days before the transfer was made. He is therefore bound by the $485,000 valuation as the figure to be used to compare the value received in exchange for the transfer.

There was no substantially contemporaneous exchange of value as required by Minn.Stat. § 513.43(c). The downpayment was a nullity, since it was given by Erling and Catherine to Donald. Further, there was no written evidence of any payments by Donald to the trust although he testified he made them. Leth's 1986 financial statement did not list any income from the trust, and Leth himself testified that he was not aware of any payments made to it.

Leth alleges that he received probate and other tax benefits from the transfer to the trust. There is no tax advantage, however, because any income from the family trust would be taxable to Leth and the $350,000 exemption for estate taxes would render any supposed probate advantages unneces-

sary. The trial court concluded that Cyr's proposal for transferring the land to Donald was merely a ruse with the aim of protecting this asset from the debt Leth incurred as a result of his involvement with the Zumbro venture; the evidence supports the trial court's determination.

Given the absence of a downpayment and the financial statement which Leth signed five days before the transfer, valuing at approximately $200,000 the 110 acres in question, the evidence also supports the trial court's finding that Leth did not receive a reasonably equivalent value in exchange for the land. *See First National Bank of Cold Spring v. Jaeger*, 408 N.W.2d 667, 670 (Minn.Ct.App.1987) (transfer of land in exchange for debt forgiveness of only one-third of the land's value held to be not a reasonably equivalent exchange).

Despite protestations to the contrary, Leth was involved in numerous discussions with the bank in early 1984, he was still an officer of Zumbro, he made $5,000 in payments on behalf of Zumbro in 1984, and his 1984 financial statement contained an annotation concerning Zumbro. There was sufficient evidence showing that Leth was engaged in that business at the time of the transfer.

The trial court found that Leth had no remaining assets after the transfer to the trust. Similar to this case, *Kessel v. Kessel*, 370 N.W.2d 889 (Minn.Ct.App.1985), concerned a transfer to a trust rendering a debtor insolvent. Mr. Kessel transferred all of his assets except a car and a condominium into an irrevocable trust. The trust owned the stock of the corporation which owned his bakery. As president of the corporation, he sold the bakery on a contract for deed a week after the transfer to the trust and then he claimed he could not pay spousal maintenance ordered by a trial court.

Exempt assets are excluded from the definition of assets under Minn.Stat. § 513.41(2). This court held in *Kessel* that the debtor was insolvent if (1) he had no non-exempt assets or (2) his non-exempt assets minus his liabilities were less than or equal to zero. *Kessel*, 370 N.W.2d at 893–4.

Leth's 1986 financial statement similarly shows no remaining non-exempt assets and no income from the trust by which Leth could pay off his debts, including the December 1986 judgment on the $25,000 loan guarantee. Moreover, the trust disbursements are in the sole discretionary control of Catherine Leth, who did not sign the promissory notes on which the bank is seeking to collect.

This 1986 financial statement is in stark contrast to the 1984 statement and supports the trial court's conclusion that Leth had no assets remaining after the transfer. The transfer is therefore fraudulent as to the bank's claims.

## II

Under Minn.Stat. § 513.44(a)(2)(ii), in addition to a showing of no reasonably equivalent value, the bank must also prove that Leth intended to incur or believed or reasonably should have believed he would incur debts beyond his ability to pay, *after* the June 1, 1984, transfer. Intent to incur debts beyond the ability to pay can be inferred from circumstantial evidence. *See Barnard v. Seaman*, 169 Minn. 409, 412, 211 N.W. 473, 474 (1926):

The trust proposal drawn up by Cyr noted Leth's involvement with Zumbro as an "area of concern" and "risk" to the land transferred and noted the need to safeguard Leth's assets from "additional encumbrances." There were prospective debts, including the IRS lien and the SBA loans; Leth was notified in May 1984 that the bank had called in the SBA guarantees and turned over the loans to them, implying that the SBA would soon seek to collect on Leth's personal guarantees. Thus, there is substantial circumstantial evidence that Leth actually believed he would incur debt greater than his ability to pay.

Leth, throughout his involvement with Zumbro, was aware of the financial problems facing the corporation. The trial court had sufficient evidence to support its

conclusion that Leth was left with debts in the near future beyond his ability to pay as they came due.

## III

Minn.Stat. § 513.44(a)(1) forbids debtors to make a transfer "with actual intent to hinder, delay or defraud any creditor of the debtor." Minn.Stat. § 513.44(b) contains a lengthy list of "badges of fraud" which help determine actual intent.

Leth transferred the land, via the family trust, to Donald, his son and business partner. Minn.Stat. § 513.44(b)(1) (transfer to an insider). The trust was designed to be revocable by Erling and Catherine, supporting the trial court's conclusion that Erling Leth retained control of the property transferred. Minn.Stat. § 513.44(b)(2).

As of the date of transfer, the bank had called in the SBA to take over the loans and had notified Leth that the SBA would be calling in his personal guarantee on the loans, thus raising the threat of suit. Minn.Stat. § 513.44(b)(4).

Leth's transfer to a trust which could make payments to Leth in the sole discretion of the trustee left him with no nonexempt assets and thus rendered him insolvent. Minn.Stat. § 513.44(b)(5), (9).

Leth did not receive a reasonably equivalent value in exchange for the land transfer. This is also a badge of fraud under Minn.Stat. § 513.44(b)(8). We find here, given the several badges of fraudulent intent noted above, that the evidence supports the trial court's finding that Leth made the transfer to the trust with actual intent to hinder, delay or defraud his creditors.

*State, Department of Public Welfare v. Thibert*, 279 N.W.2d 53 (Minn.1979), involved a farmer who, facing a possible liability suit, transferred land to a family trust. In dicta, our supreme court noted that, assuming fraudulent intent as to the farmer's future creditors (from a possible liability suit), the land transfer could be set aside. *Id.* at 57.[1]

## DECISION

The trial court did not err in concluding that Leth's transfer of land to a family trust violated Minn.Stat. § 513.44 and, in voiding the transfer, leaving the land subject to all liens incurred upon it.

Affirmed.

---

1. The case, however, involved a creditor of the farmer's wife and thus the transfer was not voided.