**RESOLUTION TRUST CORPORATION,**
Respondent,

v.

**INDEPENDENT MORTGAGE SERVICES, INC., Respondent (C1–93–2243), Appellant (C1–93–2274),**

**Brookside Professional Buildings Association, Appellant (C1–93–2243), Respondent (C1–93–2274),**

**Russell James Johnson, et al., Defendants.**

Nos. C1–93–2243, C1–93–2274.

Court of Appeals of Minnesota.

July 26, 1994.

Review Denied Sept. 28, 1994.

Thomas C. Racette, Reinhardt & Anderson, St. Paul, for Brookside Professional Bldgs. Assoc., appellant (C1–93–2243), respondent (C1–93–2274).

Michael A. Putnam, J. Michael Schwartz, Popham, Haik, Schnobrich & Kaufman, Ltd., Minneapolis, for Resolution Trust Corp.

Kevin W. Rouse, Minneapolis, for Independent Mortg. Services, Inc., respondent (C1–93–2243), appellant (C1–93–2274).

Considered and decided by SCHUMACHER, P.J., and AMUNDSON and HOLTAN, JJ.

## OPINION

HARVEY A. HOLTAN, Judge.*

This appeal arises from a "paper trial," involving the foreclosure of a mortgage originally held by Duval Federal Savings & Loan. The parties agreed that the determinative issue before the trial court was the validity of a note, mortgage, and assignment executed by Independent Mortgage Services.

Both parties moved for summary judgment, but the matter proceeded as a bench trial, based solely on documents, affidavits, and written arguments of counsel. On appeal, Independent Mortgage Services and Brookside Professional Buildings Association challenge the trial court's conclusion that the instruments were valid and that Duval Federal Savings & Loan was entitled to foreclose.

## FACTS

Pursuant to appellate rules, the parties submitted a statement of the record "setting forth only the facts averred and proved [that were] essential to a decision of the issues presented." Minn.R.Civ.App.P. 110.04. Our statement of facts reflects the parties' agreement as to the record.

Independent Mortgage Services, Inc. (IMS) was the fee owner of the Brookside Professional Buildings, Condominium # 305, in St. Louis Park, Minnesota. The Brookside Professional Buildings Association (Brookside) was the owners' association created to operate and to manage the eight-unit condominium complex.

On September 22, 1987, IMS executed three documents: (1) a promissory note (the note) to itself for $103,500; (2) a "mortgage deed," (the mortgage) that ran from IMS as mortgagor to IMS as mortgagee and encumbered the condominium; and (3) an assignment of the mortgage (the assignment) to Duval Federal Savings & Loan (Duval).

IMS subsequently endorsed the note as follows:

Pay to the Order of:

*Duval Federal Savings & Loan Association*

without recourse

Independent Mortgage Services, Inc.

By: /s/ Margaret A. Schenck

Its: AVP

Both the mortgage and the assignment were duly recorded in Hennepin County.

The assignment explicitly recited and acknowledged the existence of a $103,500 debt to Duval. IMS had an established credit line with Duval, and Duval credited IMS's account for $103,500. Effectively then, IMS created a mortgage to itself and assigned the mortgage to its creditor, Duval. The record does not indicate why IMS assigned the mortgage to Duval rather than executing a mortgage directly to Duval.

IMS made payments on the note to Duval until April 1988. In December 1989, Duval commenced a foreclosure action, and Brookside filed a timely answer asserting a condominium association lien. In January 1990, the Resolution Trust Corporation (RTC) took over Duval either as conservator or receiver, and the trial court substituted RTC as plaintiff in lieu of Duval.

The issues at trial involved the validity of the mortgage and the priority of the Brookside lien. The court found that (1) IMS executed the note, mortgage and assignment contemporaneously and specifically acknowledged in the assignment receiving $103,000 in consideration;[1] (2) Duval credited IMS's

---

* Retired judge of the district court, serving as judge of the Minnesota Court of Appeals by appointment pursuant to Minn. Const. art. VI, § 10.

1. The assignment acknowledges consideration of $103,500. The trial court's finding refers to consideration of $103,000. There is no indication

draft account for $103,500; (3) IMS made payments on the note through April 1, 1988 and then ceased to make payments; (4) as of July 1, 1993, the outstanding amount due on the note was $178,224.10; (5) the mortgage and assignment when read together constituted a valid and enforceable legal (not equitable) mortgage lien against the premises; (6) Brookside had a junior lien against the premises in the amount of $5,067.25; and (7) plaintiffs were entitled to foreclose the property. IMS and Brookside appeal.

## ISSUES

I. Is the mortgage legally enforceable?

II. Does the evidence support the finding of fact regarding the amount due under the note and mortgage?

## ANALYSIS

A trial court's factual findings, whether based on oral or documentary evidence, will not be set aside unless clearly erroneous. Minn.R.Civ.P. 52.01. On appeal from a judgment, "this court's scope of review is limited to deciding whether the trial court's findings are clearly erroneous and whether it erred in its legal conclusion." *Citizens State Bank v. Leth,* 450 N.W.2d 923, 925 (Minn.App.1990). Clearly erroneous means "manifestly contrary to the weight of the evidence or not reasonably supported by the evidence as a whole." *Northern States Power Co. v. Lyon Food Prods.,* 304 Minn. 196, 201, 229 N.W.2d 521, 524 (1975); *see also Runia v. Marguth Agency, Inc.,* 437 N.W.2d 45, 48 (Minn.1989) ("The standard for review of a bench trial is broader than the standard for jury verdicts."). *Cf. Ouellette v. Subak,* 391 N.W.2d 810, 817 (Minn.1986) ("[jury] verdict will not be set aside unless the evidence against it is practically conclusive.").

### I.

■ IMS argues that the mortgage was invalid because (1) the underlying legal mortgage was not supported by any consideration; (2) an entity cannot give a mortgage to itself; and (3) the doctrine of merger extinguished the purported legal mortgage.

that the parties actually dispute this minor dis-

■ A mortgage is a conditional deed conveying property as security for indebtedness. *Baker v. Citizens State Bank,* 349 N.W.2d 552, 557 (Minn.1984). *Baker* held that, while consideration is not required for a mortgage, "[t]he validity of the mortgage * * * depends indirectly upon consideration." *Id.* ("The condition of the mortgage is payment of the underlying debt which generally involves a contract for which consideration is required.").

IMS argues that the trial court erred by focusing on the consideration paid for the assignment rather than finding consideration lacking for the debt underlying the mortgage. IMS would have us conclude that the mortgage was void ab initio for lack of consideration, that IMS had no interest as a mortgagee to convey, and that therefore the assignment conveyed no legal rights. *See State ex rel. Southwell v. Chamberlain,* 361 N.W.2d 814, 818 (Minn.1985) (a valid assignment vests assignee with same right, title or interest as assignor had in the thing assigned).

We agree with the trial court's analysis that, viewed in its entirety, IMS's transaction accomplished the same result as would have a straightforward note and mortgage between two parties. That the parties chose a "convoluted" and "unorthodox" procedure does not change this result.

■ In the eyes of the law, the note, mortgage, and assignment may be viewed as one instrument or transaction. *Anderson v. Kammeier,* 262 N.W.2d 366, 370 n. 2 (Minn. 1977); *see also Farrell v. Johnson,* 442 N.W.2d 805, 807 (Minn.App.1989) (whether separate documents executed simultaneously should be viewed as a single contract is governed by the intent of the parties, manifested at the time of contracting and viewed in light of the surrounding circumstances).

■ The record shows that (1) the note, mortgage, and assignment were executed pursuant to a workout schedule at the same time, by the same parties, and were substantially related to the same transaction; (2) the assignment recited consideration; (3) the af-

crepancy.

fidavit signed by the assistant vice president of Duval recited consideration .paid; (4) IMS's account was credited by $103,500;[2] (5) IMS made payments on the note for six months; and (6) there was no evidence that the unorthodox procedure used to create the mortgage perpetrated a fraud upon the creditors. Thus, the consideration Duval gave IMS for assignment of the mortgage also supported the underlying mortgage.

■ Even if we were to analyze the documents individually, the result would be the same. A note, mortgage, and assignment are not operational until delivery and payment of consideration. *See Tomlinson v. Kandiyohi County Bank,* 162 Minn. 230, 234, 202 N.W. 494, 496 (1925) (mortgage executed to secure a note must be delivered to be valid and operative).

■ A mortgage by an entity to itself accomplishes little. It is axiomatic that a corporation cannot mortgage its interest to itself because an owner cannot owe himself a debt. *See Nelson v. Nelson,* 415 N.W.2d 694, 697 (Minn.App.1987) (party may not file a mechanics' lien against his own property).

■ IMS did not pay consideration to itself, and the mortgage, while passively valid, was not fully effective until delivery was made and consideration was paid. The instruments became operational and enforceable upon payment of consideration and delivery, and we reject the argument that the instruments were void ab initio.

■ In the alternative, IMS argues that, even if a mortgage were created, the mortgage would be invalid under the doctrine of merger, because IMS held the principal estate and the mortgage at its inception.

> The theory [of merger] is that when a mortgagee's interest and the fee title coincide and meet in the same person, the lesser estate, the mortgage, merges into the greater, the fee, and is extinguished. Courts also state that whether merger has

occurred depends on the intent of the parties, especially the one in whom the interests unite. If merger is against that party's best interest, it will not be deemed intended by the parties.

> Grant S. Nelson & Dale A. Whitman, *Real Estate Finance Law* § 6.15 (2d ed. 1985).

■ Where a merger would frustrate the interests of the party holding both estates and that party's intent regarding merger has not been expressed, merger will not be presumed to occur. *See Guaranty Trust Co. v. Minneapolis & St. L.R. Co.,* 36 F.2d 747, 764 (8th Cir.1929) (merger depends on parties' intent), *cert. denied,* 281 U.S. 756, 50 S.Ct. 407, 74 L.Ed. 1166 (1930); *Thompson v. First Nat'l Bank,* 180 Minn. 552, 555, 756, 231 N.W. 234, 236 (1930) (whether merger occurs "rests largely in the intention, actual or presumed, of the person in whom the interests are united."). IMS executed the note and mortgage contemporaneously with the assignment as part of a workout plan to solve its financial problems. We will not apply the doctrine of merger to defeat the benefit conferred on IMS and its clear intent as expressed in the contemporaneous creation and assignment of the mortgage.

The parties intended the note, mortgage, and assignment to convey a valid mortgage in favor of Duval. We conclude that the mortgage was enforceable; thus, Brookside's interest is junior to the interest of RTC, and we need not address the issue of whether an equitable mortgage was created.

## II.

■ IMS claims that there is no record evidence to support the trial court's finding on the amount due on the mortgage. Finding of fact number 15 provides:

> The outstanding amount due under the note and mortgage as of July 1, 1993 is One Hundred Seventy–Eight Thousand, Two Hundred Twenty–Four and 10/100 ($178,224.10) comprising $103,171.78 in

---

2. IMS argues the trial court's findings that IMS's draft account was credited by $103,500 is contested by an October 7, 1987 statement showing "loans not funded," a mortgage loan purchase schedule, plaintiff's answer to interrogatories stating it is RTC's understanding that the mortgage assignment was provided as part of a workout arrangement on IMS's debt, and other documents relating to the funds. Without evidence in the record explaining these documents, the numbers and columns are meaningless.

principle, $53,778.24 in accrued interest, $18,446.55 in escrow/impound overdraft, $2,714.28 in unpaid late fees, and $113.25 in unpaid miscellaneous fees.

The record shows that the principal owed on the note and mortgage as of July 1, 1993 was $103,171.78, plus various late fees, miscellaneous fees, and accrued interest. IMS neither demonstrates how the trial court erred—whether mathematically or because of faulty evidence—nor suggests a different figure than what the trial court found. Therefore, we cannot say that the trial court committed clear error in assessing the amount due.

Both parties concur that the trial court erred by finding that the redemption period commenced six months after the date of the foreclosure sale. We agree with the parties that the statutory redemption period applies. *See* Minn.Stat. § 581.10 (1992) (mortgagor may redeem the premises within time specified from the *date of the order of confirmation*). We therefore modify the judgment to reflect that the redemption period runs from the date the court confirms a foreclosure sale.

### DECISION

1. Because the mortgage and note were executed contemporaneously with an assignment and because the evidence demonstrated the parties' intent to create a valid mortgage and assignment, we affirm the trial court's decision that the mortgage was valid and enforceable.

2. The trial court did not err in determining the amount owing on the note.

3. The trial court's judgment is modified to reflect that the redemption period runs from the date that the court confirms a foreclosure sale.

**Affirmed as modified.**