**Ina M. LAGAE, Petitioner,**

v.

**Edward J. LACKNER, individually; Doris K. Lackner, individually; and Richard I. Kornfeld, individually, Respondents.**

**No. 98SC593.**

Supreme Court of Colorado,
En Banc.

March 27, 2000.

Rothgerber Johnson & Lyons, LLP, James R. Walker, Justin D. Cumming, Denver, Colorado Attorneys for Petitioner.

Preeo, Silverman & Green, P.C., Jersey M. Green, Denver, Colorado Attorney for Respondents.

Justice HOBBS delivered the Opinion of the Court.

We granted certiorari to review the court of appeals opinion in *Lackner v. King*, 972 P.2d 690 (Colo.App.1998).[1] This appeal arises out of the attempted seizure of trust property to satisfy a co-trustee's individual debts. Judgment creditors sought satisfaction of their judgments based on a personal representative's deed to the co-trustee "as trustee" that did not identify the beneficiaries of the trust or reference a document of record containing such information, as provided by section 38–30–108, 10 C.R.S. (1999). We hold that this statutory section does not allow judgment creditors to satisfy their judgments from trust property when they did not rely on the non-conforming personal representative's deed in extending credit to the individual serving as trustee. Thus, we reverse the judgment of the court of appeals and uphold the trial court's refusal to enforce the creditors' notices of levy and seizure,

1.  We granted certiorari on the following issues:

    1.  Whether a trust beneficiary's property held in trust can be seized by a trustee's individual creditors where the trustee is not a beneficiary and in a manner contrary to the intentions and expectations of the trust's settlor.
    2.  Whether the court of appeals erred in applying § 38–30–108, 10 C.R.S. (1999), a notice statute covering instruments conveying real property, to a personal representative's deed which, according to the Colorado Probate Code, does not convey real estate.
    3.  Whether the court of appeals erred in holding that failure to comply with § 38–30–108, 10 C.R.S. (1999), allows a trustee's individual creditors to seize trust property.

although for different reasons than those provided by the trial court.

## I.

On April 10, 1987, James Yves Adolph Marie Lagae (J.Y. Lagae) executed a trust agreement establishing the J.Y. Lagae Revocable Trust. The trust agreement named Paul W. King (King) and Darrell Beck, Jr. (Beck) as trustees. It also provided that J.Y. Lagae's wife, Ina May Crafton Lagae (Ina Lagae), would be the sole beneficiary of the trust during her lifetime.

Upon his death, J.Y. Lagae's will contained a pour-over provision directing the residuary of his estate to be transferred to the J.Y. Lagae Revocable Trust. On December 31, 1993, Ina Lagae, as Personal Representative of J.Y. Lagae's estate, transferred the disputed property, a ranch consisting of three parcels of real property located in Douglas County, to the trust. Ina Lagae executed a personal representative's deed identifying "Paul W. King and Darrell Beck, Jr., Trustees of the J.Y. Lagae Revocable Trust," as grantees. The deed also identified the case number for J.Y. Lagae's probate case pending in Douglas County. In addition, the deed stated that it was for "probate purposes." The deed did not identify, on its face, the beneficiaries of the trust or reference a document of record containing such information.

On January 5, 1995, Ina Lagae recorded the personal representative's deed with the Clerk and Recorder of Douglas County. In addition to recording the deed, Ina Lagae also filed a Trust Registration Statement[2] and an Affidavit of Trust[3] with the Clerk of the District Court of Douglas County on March 6, 1995.

In May of 1995, Edward J. Lackner, Doris K. Lackner and Richard I. Kornfeld (collectively, "the creditors") filed a complaint against King, alleging that King had defaulted on six unsecured promissory notes executed between him and the creditors during the

period of March 1, 1994 to October 12, 1994. The district court entered default judgments in July and August, 1995, after King failed to answer the complaints. The judgments entered against King totaled $324,990.86, exclusive of attorney's fees, accrued interest, and costs.

On December 23, 1995, the judgment creditors served King with notices of levy or seizure of the trust property. Ina Lagae intervened in the suit and moved to set aside the notices on the basis that the property was held in trust and she was the sole beneficiary during her lifetime. She claimed that King had no equitable title to the property and, thus, the creditors could not satisfy their judgments from it.

The trial court ruled that (1) the notices of levy or seizure must be set aside; and (2) the judgment lien had not attached to the property. The trial court observed that the personal representative's deed did not comply with section 38–30–108 because it did not identify the beneficiaries of the trust. It found, however, that the affidavit of trust constituted prima facie evidence of the facts contained within it and gave notice to the world that the property described in the deed was part of the trust, thus satisfying the requirements of section 38–30–108. Because King had no ownership in the trust property and held it in his fiduciary capacity, the trial court concluded that the creditors could not seize the property in satisfaction of their judgments against King in his personal capacity.

The creditors appealed. The court of appeals held that the trial court erred in concluding that the affidavit of trust cured the failure of the personal representative's deed to identify the beneficiaries of the trust. It ruled that section 38–30–108 specifically required either the beneficiaries to be named in the personal representative's deed or the deed to reference another recorded docu-

---

2. The Trust Registration Statement, dated January 26, 1995, identified the existence of the J.Y. Lagae Revocable Trust, noted the date of the trust agreement, and identified the trustees, in accordance with section 15–16–101, 5 C.R.S. (1999).

3. The Affidavit of Trust, dated January 26, 1995, defined the trust, identified the trustees, and confirmed the authority of the trustees to convey real property held by the trust, in accordance with section 38–30–166, 10 C.R.S. (1999).

ment which would provide such information. Because the personal representative's deed failed to meet these requirements, the court of appeals held that the creditors could reach the trust property to satisfy the personal judgments against King.

We reverse the judgment of the court of appeals and uphold the trial court's refusal to enforce the creditors' notices of levy or seizure.

## II.

■ We hold that the failure of a personal representative's deed to list the beneficiaries of a trust or reference a document of record providing such information, pursuant to section 38–30–108, does not render trust property available to satisfy personal judgments against a trustee when the creditors placed no reliance on the non-conforming personal representative's deed in extending the credit.[4]

### A. Intent and Purpose of Section 38–30–108

■ A fundamental tenet of trust law is the protection of the trust estate from a trustee's personal creditors. *See* George Gleason Bogert & George Taylor Bogert, *The Law of Trusts and Trustees* § 146, at 54 (2d rev. ed.1993). The creditors here do not argue that they are creditors of the J.Y. Lagae Trust; rather, they are judgment creditors of King as an individual.

■ In interpreting a statute, we must give effect to the intent of the legislature. *See AviComm, Inc. v. Colorado Pub. Util. Comm'n*, 955 P.2d 1023, 1031 (Colo.1998). In doing so, we presume that the General Assembly intended a just and reasonable result. *See id.;* § 2–4–201(1)(d), 1 C.R.S. (1999). We construe the various parts of a statute to give consistent, harmonious, and sensible effect to the statute as a whole. *See Cooper v. People,* 973 P.2d 1234, 1239 (Colo.1999). Thus, we will not adopt a statutory interpretation that defeats legislative intent. *See AviComm,* 955 P.2d at 1031. Although we

must give effect to the statute's plain and ordinary meaning, the General Assembly's intent and purpose must prevail over a literalist interpretation that leads to an absurd result. *See id.*

Section 38–30–108 sets the guidelines for conveying property, including trust property, to a party in a representative capacity. It provides:

> All instruments conveying real estate, or interests therein, in which the grantee is described as trustee, agent, conservator, executor, administrator, or attorney-in-fact, or in any other representative capacity, *said instruments shall also name the beneficiary so represented and define the trust or other agreement under which the grantee is acting, or refer, by proper description to book, page, document number, or file* to an instrument, order, decree, or other writing which is of public record in the county in which the land so conveyed is located in which such matters appear; *otherwise the description of a grantee* in any such representative capacity in such instruments of conveyance shall be considered and held a description of the person only and *shall not be notice of a trust or other representative · capacity of such grantee.*

§ 38–30–108 (emphasis added).

Here, the personal representative's deed named King and Beck as co-trustees of the J.Y. Lagae Revocable Trust, but the deed did not list the beneficiaries of the trust. The trial court, determining that the beneficiaries were not listed, then looked to the public record to ascertain whether the deed otherwise complied with section 38–30–108. It found that the affidavit of trust sufficiently met the requirements of section 38–30–108 because it provided notice that the property described was part of the trust. The court of appeals disagreed with this reasoning. Because the deed did not reference the affidavit of trust, the court of appeals determined the deed to be non-compliant with section 38–30–108's requirement that the conveying instrument "refer by proper description to book,

---

4. We do not address the circumstance where a creditor specifically relied upon the non-conforming instrument and the trustee's presumed

outright ownership of the property in extending the credit. This case presents no such circumstance.

page, document number, or file" to an instrument of public record.[5] Thus, it concluded that the unsecured creditors of King in his personal capacity should be allowed to levy upon and seize the trust property.

We determine that the court of appeals' reading of section 38–30–108 leads to a result not intended by the General Assembly. The legislature's intent in enacting this section was to give credence to actions of a trustee in selling, pledging as collateral, or otherwise dealing with trust property. Many states enacted statutes similar to section 38–30–108 to counteract the tendency of property to be considered inalienable when it had an "as trustee" grantee in its chain of title. Under the common law, when a conveyance of land was made to a person as trustee and there was nothing further to indicate the existence of a trust, the form of the instrument was held sufficient to indicate that the land was or may be held in trust. *See* Austin Wakeman Scott & William Franklin Fratcher, *The Law of Trusts* § 297.3, at 118 (4th ed.1989). In Colorado, for example, prior to the enactment of section 38–30–108, the supreme court held that "the word 'trustee,' . . . indicates the intention of the parties that the grantee was to take the title, not in his individual capacity, but *in trust* for another, though the name of his *cestui que trust* is not disclosed by the deed." *Johnson v. Calnan*, 19 Colo. 168, 177, 34 P. 905, 908 (1893) (emphasis in original).

If a trustee breached his or her duty to the trust and a transferee could have ascertained such facts through reasonable inquiry, the transferee took subject to the trust. *See* Scott & Fratcher, *supra*, at 118. This standard of diligent inquiry significantly detracted from the alienability of property and the willingness of third parties to enter into transactions. *See* Annotation, *Effect of Deed in Which the Word "Trustee" Follows the Name of Grantee, but Does Not Set Out Terms of Trust or Name of Beneficiary*, 137 A.L.R. 460, 461–62 (1942). Purchasers and lenders were refusing to deal with the trust property or the trustee unless it was shown

that (1) no trust existed or (2) the trustee specifically had a power of sale. *See* Scott & Fratcher, *supra*, at 118. Colorado, like other states, enacted statutes so that

> where the word "trustee" is added to the name of the grantee in a deed of conveyance of land in which no beneficiaries are named, and the purposes of the trust are not set forth in the deed and no other instrument showing a declaration of trust is recorded, a *purchaser of land* takes it free of any trust.

*Id.* at 118–19 (emphasis added).

B.  *Inapplicability of Section 38–30–108 to a Trustee's Unsecured Personal Creditors who did not Rely on the Non-Conforming Instrument*

█   A personal representative's deed in the course of probate is within the ambit of section 38–30–108. A personal representative has "the same power over the title to property of the estate that an absolute owner would have, in trust however, for the benefit of the creditors and others interested in the estate." § 15–12–711, 5 C.R.S. (1999). The purpose of a personal representative's deed, in the context of assets intended by the decedent to be placed in trust, is to provide evidence of the conveyance of such assets to the trust in accordance with the will's provisions, so that the trustee may act for the beneficiaries in accordance with the terms of the trust.

█   Because we have not previously construed section 38–30–108, we look to the experience of other states in construing and applying similar statutes. We hold that section 38–30–108 is a notice statute. Pursuant to its terms, Ina Lagae's personal representative's deed should have included designation of the trust's beneficiaries or referred to a public record containing such information. The statute's purpose in the context of trust assets is to allow third parties to rely on the trustee's actions in connection with the trust property, without having to determine

---

5.  We do not address the trial court's conclusion that the affidavit of trust was adequate notice of the existence of the trust, as we determine that section 38–30–108 is inapplicable to judgment

creditors of the trustee who did not rely on the non-conforming conveyancing instrument in extending credit.

whether the trustee is or is not complying with his or her fiduciary duty to the trust beneficiaries. When the instrument does not identify the beneficiaries or reference the public record containing such information, and is therefore non-compliant with the statutory notice requirement, the statute (1) protects subsequent takers by eliminating their duty of inquiry to ascertain the nature and effect of a trust relationship; and (2) prevents the undisclosed beneficiaries from contesting the interest of subsequent takers who obtained the property from the trustee or through the trustee's chain of title.

### 1. Construction and Application of Similar Statutes

In states with statutes similar to section 38–30–108, courts have held them to be notice statutes that prevent the undisclosed beneficiaries from contesting the interest of subsequent takers who relied on the non-conforming instrument. In *State v. Thibert*, 279 N.W.2d 53, 58 (Minn.1979), for example, the Minnesota Supreme Court held that the purpose of Minnesota's statute was to protect subsequent purchasers where the recorded instrument to the trustee failed to provide adequate notice of trustee powers and beneficiary rights. In so holding, it declined to allow a creditor to attach its lien to the trust property when the creditor had not examined the title or relied on the non-conforming instrument in extending credit. *See id.*

Likewise, the Ohio Supreme Court held that its statute also served as a notice statute. *See Marital Trust Under the Will of Casto v. Lungaro*, 22 Ohio St.3d 298, 490 N.E.2d 599, 600 (1986). The court stated that "[n]on-compliance with the statute does not defeat the creation of an equitable interest; it simply prevents enforcement of that interest against the particular parties named in the statute." *Id.; see also Erskine v. Elliott*, 140 Or.App. 500, 916 P.2d 319, 322 (1996) (court held that statute protects subsequent takers from a trustee by eliminating their duty of inquiry to ascertain the nature and effect of a trust relationship and prevents undisclosed beneficiaries from challenging facially valid title but does not other-

wise alter the law regarding the devolution of title).

Florida's statute provides that a non-conforming instrument "shall grant and is hereby declared to have granted a fee simple estate with full power and authority in and to the grantee in such deed to sell, convey and grant and encumber both the legal and beneficial interest in the real estate conveyed." Fla. Stat. ch. 689.07(1) (1999). Nevertheless, in *Beckham v. Rinker Materials Corp.*, 662 So.2d 760 (Fla.Dist.Ct.App.1995), the court refused to apply this statute to judgment creditors who had not relied on record title of the non-conforming instrument in extending credit:

> [T]he record demonstrates that [the judgment creditor] did not rely on the record title in extending credit to [the trustee]: [the judgment creditor] concedes that it did not search the public records and that it had no knowledge that [the trustee] had any interest in this particular property. Thus, the judgment liens do not attach to the property.

*Beckham*, 662 So.2d at 762.

Some states have specifically legislated that only purchasers, lessees, mortgagees, or assignees of the trust property, and not a trustee's individual creditors, may rely on the non-conforming instrument to the trustee. *See, e.g.*, Mont.Code Ann. § 70–21–307 (1999) ("shall have no force or effect in charging any purchaser or encumbrancer thereof with notice"); Neb.Rev.Stat. § 76–268 (1999) ("a purchaser from such trustee shall not be bound to inquire or ascertain the terms of the trust"); Ohio Rev.Code Ann. § 5301.03 (Banks–Baldwin 1999) ("subsequent bona fide purchasers, mortgagees, lessees, and assignees for value"). When statutes mention creditors, benefit of the statute is limited to creditors who relied on the trustee's apparent ownership of the property to extend credit. For example, New York's statute states that noncompliance with its requirements "does not defeat the title of a purchaser from the trustee for value and without notice of the trust, or the *rights of a creditor who extended credit to the trustee in reliance upon his apparent ownership of the trust*

*property."* N.Y. Est. Powers & Trusts Law § 7–3.2 (McKinney 1999) (emphasis added).

Other states have enacted statutes that specifically prohibit a trustee's individual creditors from reaching trust property. *See* Tex. Prop.Code Ann. § 101.002 (West 1999) ("Although trust property is held by the trustee without identifying the trust or its beneficiaries, the trust property is not liable to satisfy the personal obligations of the trustee."); Wyo. Stat. § 34–2–122 (1999) ("Trust property in the name of the trustee, agent or representative and owned only in that capacity shall not be subject to execution for the grantee's individual obligations.").

Instructed by the experience of other states with statutes similar in purpose to Colorado's, we hold that the intent and purpose of our General Assembly in enacting section 38–30–108 did not include allowing personal judgment creditors to seize trust assets to satisfy a trustee's personal obligations when those creditors did not rely on the non-conforming instrument in extending the credit. To determine otherwise would produce an absurd result. In enacting this statute, the General Assembly, like the legislatures of other states, responded to the problems faced by bona fide purchasers, lessees, mortgagees, or assignees that relied on the apparent authority of trustees. It did not intend to make trust property available to the unsecured creditors of a person who serves as a trustee for another, when those creditors placed no reliance on the non-conforming instrument in making their loans.

### 2. Lack of Reliance by Trustee's Personal Judgment Creditors

■ Here, the creditors who attempted to collect on King's personal debt through levy and sale of the ranch property loaned money to him prior to the recordation of this deed.[6] They acknowledge that they did not rely on the personal representative's deed or on the underlying property in making their

unsecured loans to King.[7] The creditors looked to rely on the deed only when they sought execution against the trust property. To allow them to seize trust property after making their unsecured loans to King in his individual capacity under such circumstances would contravene the purpose of trusts and the legislative intent of section 38–30–108.

The creditors argue that *Board of County Commissioners of County of Pitkin v. Blanning*, 29 Colo.App. 61, 479 P.2d 404 (1970), supports their position that the deed to the trustee's failure to comport with the requirements of section 38–30–108 allows them to seize the trust property. We disagree.

In *Blanning*, a dispute arose over title to property that had once been deeded to "George E. Ross Lewin, Trustee." Ross Lewin took title as trustee in 1894 and died in 1905. The property then passed under his will to his daughter. When Lewin's daughter died, she left the remainder of her property, including the subject property, to Northern Trust Company of Chicago. By quitclaim deed, the Trust Company conveyed the property to the Board of County Commissioners, plaintiffs in the dispute. The quiet-title action at issue in *Blanning* was filed in 1968. The court of appeals precluded defendants, who obtained an interest in the property pursuant to a 1956 tax sale, from prevailing. The court of appeals concluded that the 1894 deed vested title in George E. Ross Lewin personally because of the lack of specificity in the deed or in a corollary affidavit about trust beneficiaries.

*Blanning* substantially differs from the case at hand. The plaintiffs who obtained title to the property via the trustee's chain of title relied upon the non-conforming 1894 deed. The 1894 deed represents precisely the problem our notice statute was designed to address. Our statute is intended to protect the alienability of property and the integrity of the chain of title. It is not intend-

---

6. King's unsecured promissory notes were executed between March 1 and October 12, 1994. Ina Lagae's personal representative's deed was recorded on January 5, 1995.

7. The creditors argued before this court that King acted as a wealthy individual and made

verbal representations that he owned the ranch property. In extending credit, however, the creditors decided to make an unsecured loan without looking to the property as security, and they did not search the public records regarding the title to this specific property.

ed to defeat the interests of beneficiaries in favor of a trustee's personal unsecured creditors who placed no reliance on the non-conforming instrument in extending the credit.

### III.

Accordingly, we reverse the judgment of the court of appeals and remand this case to it with directions to reinstate the trial court's order quashing and setting aside the notices of levy or seizure and return this case to the trial court for further proceedings consistent with this opinion.

Justice RICE does not participate.